No. 13-1310

# United States Court of Appeals
## For The First Circuit

———————————

AARON POWELL
*Petitioner-Appellant,*

*v.*

STEVEN TOMPKINS,
*Respondent-Appellee.*

———————————

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

———————————

**BRIEF OF THE RESPONDENT/APPELLEE**

———————————

MARTHA COAKLEY
  *Attorney General of Massachusetts*
Susanne Reardon,
  *Assistant Attorney General*
Criminal Bureau, Appeals Division
One Ashburton Place
Boston, Massachusetts 02108
1st Cir. No. 23064
(617) 963- 2832
email: susanne.reardon@state.ma.us

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ...................................................................1

ISSUES PRESENTED...................................................................................1

STATEMENT OF THE CASE.......................................................................2

    I.    STATE COURT PROCEEDINGS ...................................................2
    II.   FEDERAL HABEAS PROCEEDINGS ........................................5

STATEMENT OF FACTS ............................................................................7

SUMMARY OF THE ARGUMENT ..............................................................9

ARGUMENT

    I.    THIS COURT'S REVIEW OF THE SJC'S
         DECISION IS LIMITED AND HIGHLY
         DEFERENTIAL .............................................................................12

         A.  Standard of Review of the District Court's
              Decision...........................................................................12

         B. Standard of Review of State Court Decision .....................12

              1.  To "Contrary To" Prong.......................................14
              2. The "Unreasonable Application" Prong .................15
              3. Review of Factual Determinations........................17

II.  THE SJC'S DECISION THAT THE
     MASSACHUSETTS CRIMINAL STATUTES
     REGARDING ILLEGAL POSSESSION OF
     FIREARMS PROPERLY DEFINE LICENSE AS AN
     AFFIRMATIVE DEFENSE AND DO NOT ASSIGN
     TO DEFENDANTS THE ULTIMATE BURDEN OF
     PROOF ON LICENSE POSSESSION IS NOT
     CONTRARY TO OR AN UNREASONABLE
     APPLICATION OF SUPREME COURT
     PRECEDENT ............................................................................................18

     A. AEDPA Deference Should Apply to this Claim .................................18

     B.  The SJC's Decision that the Massachusetts
         Firearm Possession Statutes Did Not Violate the
         Due Process Clause Was a Reasonable Application
         of Supreme Court Precedent ...............................................................20

         1.   States are entitled to define the elements of
              crimes and to allocate the burden of production
              to the defendant on an affirmative defense ...................................20
         2.  In the alternative, the burden-shifting
             presumption under Massachusetts law is not
             unconstitutional ...............................................................................28

III.  HABEAS RELIEF SHOULD BE DENIED WHERE
      THE MASSACHUSETTS CRIMINAL STATUTES
      REGULATING FIREARMS DO NOT VIOLATE
      THE SECOND AMENDMENT BECAUSE THEY
      DO NOT IMPOSE AN ABSOLUTE BAN ON
      FIREARM POSSESSION .....................................................................32

      A. Second Amendment rights in light of *Heller* and
         *McDonald* ..........................................................................................32

      B. The Massachusetts statutory scheme constitutes a
         proper regulation on the possession and carrying of
         firearms ...............................................................................................34

IV.   THE SJC'S DECISION THAT TRIAL COUNSEL
      WAS NOT INEFFECTIVE IN FAILING TO FILE A
      MOTION TO SUPPRESS PETITIONER'S
      STATEMENT TO A POLICE OFFICER WHILE IN
      CUSTODY WAS NOT CONTRARY TO, OR AN
      UNREASONABLE APPLICATION OF, CLEARLY
      ESTABLISHED SUPREME COURT PRECEDENT ............................39

V.    PETITIONER'S CLAIM THAT THE FIREARMS
      LICENSING STATUTES VIOLATE THE SECOND
      AMENDMENT AND THE EQUAL PROTECTION
      CLAUSE BY IMPOSING AN AGE LIMIT OF 21 IS
      PROCEDURALLY DEFAULTED AND
      PETITIONER HAS FAILED TO SHOW CAUSE
      AND PREJUDICE TO EXCUSE THE DEFAULTS .............................43

CONCLUSION .................................................................................................55

STATUTORY ADDENDUM ............................................................................56

CERTIFICATE OF COMPLIANCE WITH RULE
32(a)(7)(B) ......................................................................................................60

CERTIFICATE OF SERVICE .........................................................................60

# TABLE OF AUTHORITIES

## Cases

*Ake v. Oklahoma,*
    470 U.S. 68 (1985)........................................................43

*Aspen v. Bissonnette,*
    480 F.3d 571 (1st Cir.), *cert. denied*, 552 U.S. 934
    (2007)...........................................................12, 54

*Barnes v. Thompson*
    58 F.3d 971 (4th Cir. 1995) ..................................47

*Barry v. Ficco,*
    392 F.Supp.2d 83 (D. Mass. 2005)..........................39, 40

*Beard v. Kindler,*
    130 S.Ct. 612 (2009)...........................................43

*Brewer v. Marshall,*
    119 F.3d 993 (1st Cir. 1997)..................................44

*Brown v. Ercole*,
    547 U.S. 1022 (2006) .........................................13

*Brown v. Greiner,*
    409 F.3d 523 (2d Cir. 2005) ..................................13

*Burks v. Dubois,*
    55 F.3d 712 (1st Cir. 1995)...........................46, 47, 48

*Carey v. Musladin,*
    549 U.S. 70 (2006)...........................................13

*Castillo v. Matesanz,*
    348 F.3d 1 (1st Cir. 2003)....................................40

*Chardin v. Police Com'r of Boston*,

465 Mass. 314, 989 N.E.2d 392 (2013)........................................................34

*Clemons v. Luebbers,*
    381 F.3d 744 (8th Cir. 2004) ........................................................47

*Coleman v. Thompson,*
    501 U.S. 722 (1991)..............................................................43, 44

*Coombs v. Maine,*
    202 F.3d 14 (1st Cir. 2000)..........................................................7

*Commonwealth v. Anderson,*
    58 Mass. App. Ct. 117 (2003) ....................................................40

*Commonwealth v. Colon,*
    449 Mass. 207, 866 N.E.2d 412 (2007)........................................19

*Commonwealth v. Couture,*
    407 Mass. 178, 552 N.E.2d 538 (1990)........................................31

*Commonwealth v. Davis,*
    359 Mass. 758, 270 N.E.2d 925 (1971)........................................18

*Commonwealth v. Eberhart,*
    461 Mass. 809, 965 N.E.2d 791 (2012)........................................22

*Commonwealth v. Fletcher,*
    52 Mass. App. Ct. 166 (2001) ....................................................40

*Commonwealth v. Fuller,*
    394 Mass. 251, 475 N.E.2d 381 (1985)........................................40

*Commonwealth v. Gordon,*
    354 Mass. 722, 242 N.E.2d 399 (1968)........................................45

*Commonwealth v. Gouse,*
    461 Mass. 787, 965 N.E. 2d 774 (2012)....................................22, 23, 27, 36

*Commonwealth v. Humphries,*

465 Mass. 762, 991 N.E.2d 652 (2013)......................................................23

*Commonwealth v. Jefferson*,
    461 Mass. 821, 965 N.E.2d 800 (2012)......................................................22

*Commonwealth v. Jones*,
    372 Mass. 403, 361 N.E.2d 1308 (1977)...............................................*passim*

*Commonwealth v. Norris*,
    462 Mass. 131, 967 N.E.2d 113 (2012)......................................................22

*Commonwealth v. Powell*,
    459 Mass. 572, 946 N.E.2d 114 (2011)..................................................*passim*

*Commonwealth v. Saferian*,
    366 Mass. 89, 315 N.E.2d 878 (1974).......................................................40

*Commonwealth v. Vives*,
    447 Mass. 537, 845 N.E.2d 1241 (2006)....................................................22

*County  Court of Ulster County N.Y. v. Allen*
    442 U.S. 140 (1979)................................................................29, 31

*Cullen v. Pinholster*,
    131 S.Ct. 1388 (2011)..................................................................54

*Delaney v. Bartec*,
    510 F.3d 32 (1st Cir. 2008)............................................................41

*Dennis v. Mitchell*,
    354 F.3d 696 (7th Cir. 2003) .........................................................13

*Dennis v. Mitchell*,
    354 F.3d 511 (6th Cir. 2003) .........................................................17

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)...............................................................passim

*Drake v. Fiko*,

724 F.3d 426, 431 (3d Cir. 2013) ...............................................................37

*Early v. Packer,*
    537 U.S. 3 (2002) (*per curiam*) ..................................................................18

*Estelle v. McGuire,*
    502 U.S. 62 (1991)......................................................................................54

*Evans v. Thompson,*
    518 F.3d 1 (1st Cir.), *cert. denied*, 129 S. Ct. 255 (2008)............................16

*Fortini v. Murphy,*
    257 F.3d 39 (1st Cir. 2001)..................................................................35, 50

*GeorgiaCarry.Org, Inc. v. Georgia,*
    687 F.3d 1244 (11th Cir. 2012) ..................................................................34

*Gilmore v. Taylor,*
    508 U.S. 333 (1993)....................................................................................25

*Glacken v. Dickhaut,*
    585 F.3d 547 (1st Cir. 2009)..................................................................47,49

*Gonzalez v. Dickhaut,*
    2010 WL 4955559 (D. Mass. Nov. 30, 2010) .............................................23

*Harrington v. Richter,*
    131 S. Ct. 770 (2011)..................................................................................19

*Harris v. Reed,*
    489 U.S. 255 (1989)....................................................................................44

*Hathorn v. Lovorn,*
    457 U.S. 255 (1982)....................................................................................43

*Healy v. Spencer*,
    453 F.3d 21 (1st Cir. 2006)..................................................................12, 54

*Hightower v. City of Boston*,

639 F.3d 61 (1st Cir. 2012)..........................................................34, 36, 37, 40

*Irvine v. California,*
    347 U.S. 128 (1954)..................................................................26

*Johnson v. Mississippi,*
    486 U.S. 578 (1988)..................................................................43

*Jones v. Goodwin,*
    982 F.2d 464 (11th Cir. 1993) ...................................................54

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012)...................................................37, 50

*Kaplan v. Bowker,*
    333 Mass. 455, 131 N.E.2d 372 (1956) .......................................45

*Kater v. Maloney,*
    459 F.3d 56 (1st Cir. 2006) .......................................................38

*Kibbe v. DuBois,*
    269 F.3d 26 (1st Cir. 2001).......................................................15

*Kimel v. Bd. Of Regents,*
    528 U.S. 62 (2000)...................................................................52

*Kimmelman v. Morrison,*
    477 U.S. 365 (1986).................................................................39

*Lambrix v. Singletary,*
    520 U.S. 518 (1997).................................................................44

*Lee v. Kemna,*
    534 U.S. 362 (2002).................................................................47

*Leland v. Oregon,*
    343 U.S. 790 (1952).................................................................26

*Lindh v. Murphy*,
    521 U.S. 320 (1997)...................................................................................12

*Lively v. State*,
    427 A.2d 882 (Del. 1981) ........................................................................28

*Lockyer v. Andrade*,
    538 U.S. 63 (2003)...................................................................................15

*Martin v. Ohio*,
    480 U.S. 228 (1987)......................................................................24, 25, 26

*Massachusetts Commission Against Discrimination v.*
    *Colangelo,* 344 Mass. 387, 182 N.E.2d 595 (1962).....................................45

*McCambridge v. Hall*,
    303 F.3d 24 (1st Cir. 2002).................................................................16, 42

*McCandless v. Beyer*,
    835 F.2d 58 (3d Cir. 1987) ......................................................................31

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010)......................................................................passim

*Medina v. California*,
    505 U.S. 437 (1992)................................................................................27

*Michigan v. Long*,
    463 U.S. 1032 (1983)..............................................................................44

*Miller-El Cockrell*,
    537 U.S. 322 (2003)..........................................................................17, 18

*Morrison v. People of State of California*,
    291 U.S. 82 (1934)..........................................................................25, 26

*Obershaw v. Lanman*,
    453 F.3d 56 (1st Cir. 2006)......................................................................47

*Ortiz v. DuBois,*
        19 F.3d 708 (1st Cir. 1994)...........................................................................48

*Ouber v. Guarino,*
        293 F.3d 19 (1st Cir. 2002).......................................................................40

*Parke v. Raley*,
        506 U.S. 20 (1992).......................................................................................7

*Patterson v. New York,*
        432 U.S. 197 (1977)......................................................................24, 25, 26

*Poland v. Stewart,*
        169 F.3d 573 (9th Cir. 1999) ....................................................................47

*Rashad v. Walsh*,
        300 F.3d 27 (1st Cir. 2002)....................................................................7, 12

*Renico v. Lett,*
        130 S. Ct. 1855 (2010).........................................................................16, 17

*Renico v. Lett,*
        559 U.S. 766 (2010)....................................................................................14

*Rose v. Lundy*,
        455 U.S. 509 (1982)....................................................................................54

*Sanna v. DiPaolo,*
        265 F.3d 7 ...................................................................................................18

*Scarpa v. DuBois,*
        38 F.3d 1 (1st Cir. 1994)...........................................................................40

*Schlup v. Delo,*
        513 U.S. 298 (1995)....................................................................................49

*Schriro v. Landrigan*,
        550 U.S. 465 (2007)....................................................................................16

*Sharpe v. Bell,*
 593 F.3d 372 (4th Cir. 2010) ..........................................................................47

*Smith v. Johnson,*
 216 F.3d 521 (5th Cir. 2000) ......................................................................47

*Snyder v. Massachusetts,*
 291 U.S. 97 (1934)........................................................................................26

*South Dakota v. Dole,*
 483 U.S. 203 (1987)..............................................................................46, 50

*Speiser v. Randall,*
 357 U.S. 513 (1958)......................................................................................26

*State v. Carter,*
 255 P.3d 721 (Wash. 2011) ..........................................................................28

*State v. Robarge*,
 450 So.2d 855 (Fla. 1984) .............................................................................27

*State v. Valinski,*
 756 A.2d 1250 (Conn. 2000) ........................................................................27

*Strickland v. Washington,*
 466 U.S. 668 (1984)...............................................................................*passim*

*Sweet v. Delo,*
 125 F.3d 1144 (8th Cir. 1997) .....................................................................47

*Taylor v. State,*
 578 N.E.2d 664 (Ind. 1991) .........................................................................27

*Tobin v. Norwood Country Club, Inc.,*
 422 Mass. 126, 661 N.E.2d 627 (1996)........................................................53

*Tot v. United States,*
 319 U.S. 463 (1943)......................................................................10, 29, 31

*United States v. Barton,*
    633 F.3d 168 (3d Cir. 2011) .........................................................................34

*United States v. Frady,*
    456 U.S. 152 (1982)....................................................................................48

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) .....................................................................34

*United States v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2011) .....................................................................50

*United States v. Raines,*
    362 U.S. 17 (1960)......................................................................................45

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010) ...................................................................34

*United States v. Rene E.,*
    583 F.3d 8 (1st Cir. 2009)......................................................................50, 51

*United States v. Salerno,*
    481 U.S. 739 (1987)....................................................................................54

*United States v. Staten,*
    666 F.3d 154 (4th Cir. 2011) .....................................................................34

*Vance v. Bradley,*
    440 U.S. 93 (1979).....................................................................................52

*Wainwright v. Sykes,*
    433 U.S. 72 (1977).....................................................................................43

*Walker v. Martin,*
    131 S.Ct. 1120 (2011)................................................................................43

*Ward v. Sternes,*
    334 F.3d 696 (7th Cir. 2003) .....................................................................17

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)......................................................................54

*Washington v. State*,
    517 N.E.2d 77 (Ind. 1987) ...........................................................28

*Watt v. State*,
    31 So.3d 238 (Fla.Dist.Ct.App. 2010) .........................................27

*Williams v. Matesanz*,
    230 F.3d 421 (1st Cir. 2000*)*........................................................14

*Williams v. Taylor*,
    529 U.S. 362 (2000)....................................................13, 14, 15, 17

*Woodford v. Visciotti*,
    537 U.S. 19 (2002) *(per curiam)* ..................................................14

*Woolard v.Gallagher*,
    712 F.3d 865 (4th Cir. 2013) .......................................................37

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 110 (9th Cir. 2000), *cert. denied*,
    532 U.S. 958 (2001)......................................................................27

*Wright v. Marshall*,
    656 F.3d 102 (1st Cir. 2011).................................................35, 50

*Wright v. Van Patten*,
    552 U.S. 120 (2008) *(per curiam)* ...............................................13

*Yarborough v. Alvarado*,
    541 U.S. 652 (2004)....................................................13, 16, 17

## <u>Statutes</u>

18 U.S.C. § 922(b)(1)...................................................................53

23 U.S.C. § 158(a)(1) ........................................................................53

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 2253 ...............................................................................1

28 U.S.C. § 2254 ...........................................................................1, 19

28 U.S.C. § 2254 (d) ........................................................................35

U.S.C. § 2254 (d)(1) .........................................................................13

28 U.S.C. § 2254 (d)(2) ...............................................................17, 18

28 U.S.C. § 2254 (e)(1) ..................................................................7, 17

Mass. Gen. Laws ch. 138, § 34A ....................................................53

Mass. Gen. Laws ch. 140, § 121 .....................................................36

Mass. Gen. Laws ch. 140, § 122A ..................................................24

Mass. Gen. Laws ch. 140, § 129B ..................................................45

Mass. Gen. Laws ch. 140, § 131 .................................................3, 36

Mass. Gen. Laws ch. 140, § 131(d)(iv) ...........................................48

Mass. Gen. Laws ch. 268, § 32B .....................................................2

Mass. Gen. Laws ch. 265, § 13(D) ..................................................2

Mass. Gen. Laws ch. 269, § 10 ..................................................3, 36

Mass. Gen. Laws ch. 269, § 10(a) ...........................................2, 21, 46

Mass. Gen. Laws ch. 269, § 10(h) ..........................................2, 21, 36

Mas Mass. Gen. Laws ch. 269, § 10(h)(1) ......................................46

Mass. Gen. Laws ch. 269, § 10(n) ................................................................2

Mass. Gen. Laws ch. 278, § 7 ............................................................*passim*

Mass. R. Civ. P. 8(c) .................................................................................27

Mass. R. Crim. P. 14(b)(3) .......................................................................20

## **<u>Miscellaneous</u>**

W.R. LaFave, Substantive Criminal Law § 1.8(c)(1986).........................22

## JURISDICTIONAL STATEMENT

Petitioner Aaron Powell ("Petitioner") was convicted of possession of a firearm without a firearm identification ("FID") card, carrying a loaded firearm without a license, resisting arrest, and carrying a firearm without a license. After unsuccessfully pursuing state post-conviction remedies, Petitioner filed a petition for a writ of habeas corpus in the district court, which had jurisdiction to adjudicate the petition under 28 U.S.C. § 2254. On February 28, 2013, the district court (Young, D.J.) denied the petition. Petitioner filed a timely notice of appeal. On March 7, 2013, the district court granted a certificate of appealability as to all issues. This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1291 and 2253.

## ISSUES PRESENTED

I.    Whether the SJC's decision that the Massachusetts criminal statutes regarding illegal firearm possession properly define license as an affirmative defense and do not assign to defendants the ultimate burden of proof on license possession is contrary to or an unreasonable application of Supreme Court precedent.

II.   Whether habeas relief should be denied where the Massachusetts criminal statutes regulating firearms do not violate the Second Amendment because they do not constitute an absolute ban on firearm possession.

III.     Whether the SJC's decision that trial counsel was not ineffective in failing to file a motion to suppress petitioner's statement to a police officer while in custody was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

IV.     Whether Petitioner's claim that the firearms licensing statutes violate the Second Amendment and the Equal Protection Clause by imposing an age limit of 21 is procedurally defaulted and petitioner has failed to show cause and prejudice to excuse the default.

## <u>STATEMENT OF THE CASE</u>

## I.     STATE COURT PROCEEDINGS

On August 21, 2008, the Roxbury Division of the Boston Municipal Court issued a criminal complaint against Petitioner, charging him with possession of a firearm without a firearm identification ("FID") card, in violation of Mass. Gen. Laws ch. 269, § 10(h); assault and battery of a police officer, in violation of Mass. Gen. Laws ch. 265, §13D; carrying a loaded firearm without a license, in violation of Mass. Gen. Laws ch. 269, § 10(n); resisting arrest, in violation of Mass. Gen. Laws ch. 268, § 32B; and carrying a firearm without a license, in violation of Mass. Gen. Laws ch. 269, § 10(a).  (R.A. 167-171).[1]

---

[1]    Petitioner's Record Appendix will be referred to as (R.A. --).

Petitioner was tried without a jury on January 30, 2009. (R.A. 173). Prior to trial, at the request of the Commonwealth, the trial court dismissed the charge of assault and battery on a police officer. (R.A. 175). Justice Michael Coyne found Petitioner guilty of the remaining charges. (R.A. 173). Justice Coyne sentenced Petitioner to eighteen months in the house of correction for the conviction for carrying a firearm without a license, a concurrent sentence of six months for the resisting arrest and possession of a firearm without an FID card convictions, and a consecutive three-year term of probation for the conviction for carrying a loaded firearm. (R.A.173-174).

Petitioner's appeal was entered in the Massachusetts Appeals Court on May 20, 2009. (R.A. 71). Petitioner raised four issues: (1) the seizure of Petitioner was unsupported by reasonable suspicion in violation of Article 14 of the Massachusetts Declaration of Rights; (2) the Commonwealth presented insufficient evidence of resisting arrest; (3) the Commonwealth presented insufficient evidence of possession of an unlicensed firearm and thus, Petitioner's conviction violated the Fourteenth Amendment; and (4) Mass. Gen. Laws ch. 269, § 10 and Mass. Gen. Laws ch. 140, § 131 were unconstitutional per se and as applied because, under *District of Columbia v. Heller*, 554 U.S. 570 (2008), they unduly restrict the right to bear arms and

3

the right to self-defense, in violation of the Second and Fourteenth Amendments to the federal constitution and Article One of the state constitution, and they violate the right to equal protection under the Fourteenth Amendment and Article One because they ban eighteen to twenty year olds from possessing firearms. (R.A. 78-79).

The Appeals Court heard oral argument on May 12, 2010. (R.A. 72). Subsequently, the Supreme Court issued its decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Petitioner and the Commonwealth each filed a supplemental memorandum of law addressing the *McDonald* decision. (R.A. 72). On August 24, 2010, before the Appeals Court issued a decision, the Massachusetts Supreme Judicial Court ("SJC") took the appeal *sua sponte*. (R.A. 74). The SJC issued a decision in the case on April 28, 2011. *Commonwealth v. Powell*, 459 Mass. 572, 946 N.E.2d 114 (2011) (R.A. 331-348). The SJC held that Petitioner's convictions for unlawful possession of a firearm did not violate the Due Process Clause because, under Massachusetts state law, the absence of a license is not an element of the crime, and therefore placing the burden on Petitioner to show that he had a valid license or FID card does not create an unconstitutional presumption or shift to Petitioner the burden of proof on an essential element of the crime. (R.A. 343). The SJC also rejected Petitioner's claims that the

Massachusetts firearms statutes violate the Second Amendment and equal protection guarantees because they prohibit eighteen to twenty year olds from possessing firearms.  The SJC noted that the right secured by the Second Amendment is not unlimited and that the Supreme Court in *Heller* and *McDonald* did not ban all regulation of firearms.  (R.A. 347-348).  The SJC, however, held that because Petitioner did not contend that he had ever applied for an FID card or firearm license, and therefore could not show that he had been denied a card or license, he did not have standing to challenge the licensing statutes under either the Second Amendment or equal protection. (*Id.*).

Petitioner filed a petition for writ of certiorari in the United States Supreme Court on September 24, 2011.  (R.A. 75).  The Court denied certiorari on March 19, 2012.  (R.A. 75, 349).

## II.    FEDERAL HABEAS PROCEEDINGS

Having failed to obtain relief in the state courts, Petitioner filed a habeas petition in the United States district court on April 23, 2012 raising four claims: 1) violation of due process rights to the presumption of innocence and not to be convicted except upon proof beyond a reasonable doubt on each and every element of the crimes, by shifting to the petitioner the burden of showing he had a license and registration card for the firearm;

2) trial counsel's failure to move to suppress the petitioner's statements to a police officer while in custody constituted ineffective assistance of counsel; 3) defining the crimes under the applicable statute and state cases as simple possession or carrying of a firearm without more, violates the Second Amendment right to keep and bear arms; and 4) the Massachusetts firearms statutes violate the Second Amendment right to keep and bear arms and the Fourteenth Amendment right to equal protection, per se and as applied, because they ban all 18-20 year old adults from carrying handguns outside the home and ban them from any handgun possession with one narrow exception.  (R.A. 1, 9-14).  Respondent filed an answer on June 1, 2012. (R.A. 2).  Following briefing on the merits of the claims, the district court (Young, D.J.) denied the habeas petition on February 28, 2013 finding: 1) that the SJC's decision did not violate AEDPA where the burden shifting presumption in the Massachusetts statute did not violate constitutional protections; 2) that Petitioner did have standing to raise the Second Amendment and equal protection claims but the Massachusetts licensing scheme did not violate these provisions; and 3) that the SJC's holding on the Petitioner's ineffective assistance of counsel claim was not an unreasonable application of clearly established Supreme Court caselaw.  (Add. 73-129; R.A. 2).  Petitioner filed a motion to vacate the order on March 6, 2013.

(R.A. 3).  Judge Young denied the motion to vacate and issued a certificate of appealability as to all issues on March 7, 2013.  (R.A. 3).  Petitioner filed a Notice of Appeal on March 7, 2013.  (R.A. 3).

## STATEMENT OF FACTS

On habeas review, findings of fact made by a state court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  This presumption of correctness extends to factual determinations made by both state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002), as well as to any factual findings implicit in the state courts' rulings.  *See Parke v. Raley*, 506 U.S. 20, 35 (1992).  A habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000).

The SJC found the following facts with regard to the motion to suppress:

> On August 20, 2008, at approximately 11 P.M., Boston police officer Manuel Blas and his partner, Scott Roby, were on routine patrol on Sonoma Street heading toward Maple Street in the Roxbury section of Boston.  The officers were in an unmarked Crown Victoria automobile with antennae on the back like those that appear on a marked police cruiser, and as such, are often recognized as an unmarked police cruiser.  Officer Roby was driving: Officer Blas was seated in the front passenger seat.  Both officers were dressed in plain clothes.  Officer Blas wore a badge that identified him as a Boston police

officer on a chain around his neck.   Officer Roby displayed a badge on his clothing.  Officer Blas had responded to that area in the past for calls concerning 'shots fired,' disturbances, and gun-related offenses.

As the officers approached the intersection, they observed about twenty-five people who were separated into three groups. There were both men and women, and they appeared mainly to be teenagers with a couple of individuals appearing to be in their early twenties.   One group was comprised of about ten individuals who were standing in the vicinity of 87 Maple Street, which was to the officers' right.  The other two groups were across the street; one consisted of about five individuals and the other of approximately ten individuals.

Officer Roby was driving 'very slowly.'  The windows in the vehicle were down.  The officers did not activate any lights or sirens, and did nothing to indicate that they were police.  The officers heard yelling between the two groups and saw individuals pointing at each other.  It appeared to Officer Blas that an altercation was brewing.   While driving between the groups, however, it became 'eerliy quiet.'  Officer Blas noticed one young man, the [petitioner], standing apart from the groups on the 87 Maple Street side of the street.

The [petitioner] was not interacting with any other people, and looked away after he saw the officers.  The [petitioner] then walked on the sidewalk toward he officers and through the group congregating at 87 Maple Street.  As he started walking, the [petitioner's] right hand moved to his right hip, and his left hand moved to the center of his waist, as if he was grasping something, which, based on Officer Blas's experience and training, appeared to be a gun.  Once the [petitioner] got past the group, he started to run.

Officer Blas got out of the vehicle and followed the [petitioner] up Sonoma Street.  He saw that the [petitioner] was clutching something with his right hand on his right side, with his left hand positioned in the 'center right of his waist.'   The [petitioner] ran to a driveway near a garage.  Officer Blas

observed that the [petitioner] was holding the handle of what Officer Blas believed to be a gun.  As he ran, the [petitioner], using his right hand, pulled out a firearm, a .22 caliber revolver.  Officer Blas held a flashlight in his left hand and drew his gun with his right hand, pointing it at the [petitioner].  Officer Blas twice yelled, 'Drop it.'

The [petitioner] turned left and ran to a fence along the driveway.  As he tried to climb the fence, the [petitioner] dropped the revolver to the ground.  Unable to get over the fence, the [petitioner] ran between the fence and a vehicle parked in the driveway in the rear area of the garage.  Officer Blas lost sight of the [petitioner] for a few seconds.  The [petitioner] emerged from the left side of the driveway, charging at Officer Blas with his hands clutched in fists.  Officer Blas moved to his side, and the [petitioner] ran into Officer Roby who had been trailing Officer Blas.  The [petitioner] knocked Officer Roby's flashlight out of his hand.  Officer Blas placed his gun in his holster and chased the [petitioner] down Sonoma Street.  Officer Blas eventually caught up with the [petitioner] when he ran into two armed security guards who worked in the neighborhood.  Officer Blas arrested the [petitioner].  Officer Roby secured the revolver dropped by the [petitioner], which police soon determined to be loaded.

(R.A. 338-339).  Substantially similar evidence was presented at trial.

*See* Statement of Facts as presented in the Commonwealth's brief.

(R.A. 259-263).

## SUMMARY OF THE ARGUMENT

Petitioner claims that his conviction should be overturned because the Massachusetts criminal statutes regarding illegal firearm possession relieve the prosecution of proving each element beyond a reasonable doubt by

imposing a statutory presumption on the defendant to come forward with evidence of a license as an affirmative defense.  The SJC properly rejected this claim by reiterating its prior holdings that absence of a license was not an element of the crime and that M.G.L. c. 278, § 7 merely shifts the burden of production of the license issue to the defendant while maintaining that the ultimate burden of proof remains on the prosecution.   This is in accord with Supreme Court precedent which has held that states are entitled to define the elements of crimes and may even allocate the burden of proof on an affirmative defense to the defendant.  Alternatively, the burden-shifting presumption under M.G.L. c. 278, § 7 meets the standard set forth in *Tot v. United States*, 319 U.S. 463 (1943) where there is a rational connection between the facts proved (possession of a firearm) and the fact presumed (lack of a valid license).  See Argument II.

The Massachusetts criminal statutes regarding firearm possession are also in accord with the Second Amendment in light of recent Supreme Court decisions interpreting the reach of the right to bear arms.  The Massachusetts statutes do not constitute an absolute ban on the possession of firearms in the home for self-defense.  Where Petitioner was convicted for illegally possessing a firearm outside of the home, he is not protected by the Second Amendment.  Argument III.

The SJC properly held that trial counsel was not constitutionally ineffective for failing to file a motion to suppress Petitioner's statement to police while in custody and without Miranda warnings that he did not have a firearm. Petitioner argues that if this statement had been suppressed, the Commonwealth could not have met its burden of proof on the licensing element and could not have demonstrated consciousness of guilt. The SJC's decision was a reasonable application of *Strickland* where it held that even if the statement had been suppressed , there was other evidence of consciousness of guilt and the Commonwealth was not obligated to prove absence of a license. Argument IV.

Petitioner's arguments that the Massachusetts firearms licensing scheme, which restricts firearms licenses to those 21 or older, violates the Second Amendment and the Equal Protection Clause are procedurally defaulted in light of the SJC's finding that Petitioner did not have standing to raise these claims. Standing is an independent and adequate state law ground and Petitioner has failed to show cause or prejudice to excuse the procedural default. If this Court rejects the procedural default argument and considers the claims on the merits, it should reject them. The Supreme Court has made it clear that the Second Amendment protects only the right to possess a firearm in the home. The fact that only those over 21 may apply

for a license to carry a firearm outside the home in Massachusetts therefore does not violate the Second Amendment. Nor does the licensing statute violate the Equal Protection Clause where age is not a protected class and where the Second Amendment does not preclude states from regulating the possession or licensing of firearms. Argument V.

## ARGUMENT

I.    **THIS COURT'S REVIEW OF THE SJC'S DECISION IS LIMITED AND HIGHLY DEFERENTIAL.**

A.    Standard of Review of the District Court's Decision

This Court reviews *de novo* the district court's denial of a petition for a writ of habeas corpus. *Aspen v. Bissonnette*, 480 F.3d 571, 573 (1st Cir.), *cert. denied*, 552 U.S. 934 (2007). "[T]he district court opinion, while helpful for its reasoning, is entitled to no deference." *Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir. 2006).

B.    Standard of Review of State Court Decision

The instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and therefore, review is governed by the AEDPA's highly deferential standard of review. *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)). Under the AEDPA, a federal court may

12

not grant a writ of habeas corpus on a claim that was "adjudicated on the merits" in a state-court proceeding unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In application, the AEDPA constrains federal courts' ability to grant habeas relief in two ways. First, the AEDPA restricts the source of the rule of decision applicable in habeas cases: the rule of decision must come from a Supreme Court case (or cases) decided before the state-court decision now challenged.  *See* 28 U.S.C. § 2254(d)(1); *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Brown v. Greiner*, 409 F.3d 523, 533 (2d Cir. 2005) (subsequent Supreme Court cases "play no role in assessing the reasonableness of the state court decisions"), *cert. denied sub nom.*, *Brown v.Ercole*, 547 U.S. 1022 (2006).  And, equally important, such a rule must constitute "clearly established Federal law." *Yarborough*, 541 U.S. at 660-61; *Williams*, 529 U.S. at 412.  *See also Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (*per curiam*) (reversing a grant of habeas relief because the law on the decisive issue had not been clearly established by the Supreme Court's holdings); *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (same).

Second, the AEDPA requires federal courts use a "highly deferential standard for evaluating state-court rulings, [and] demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 23 (2002) (*per curiam*) (citation omitted); *Renico v. Lett*, 559 U.S. 766, 773 (2010) (same). Applying this deferential standard, habeas relief can only be granted where the state court decision at issue is either "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law.

### 1.    The "Contrary To" Prong

The "contrary to" prong addresses "cases in which a state court decision directly contravenes Supreme Court precedent." *Williams v. Matesanz*, 230 F.3d 421, 424 (1st Cir. 2000). A state-court decision is "contrary to" clearly established Supreme Court precedent if it either applies a rule that contradicts the governing law set forth in the Court's cases, or resolves a case differently from the Court on a set of materially indistinguishable facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*) (quoting *Williams*, 529 U.S. at 405). Under either scenario, for a state court decision to be "contrary to" clearly established Supreme Court law the state court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to

clearly established Supreme Court law. *Williams*, 529 U.S. at 405. As

discussed above, established Supreme Court law is limited to those cases

decided by the Court before the state court rendered the decision at issue in

the habeas petition.

### 2. The "Unreasonable Application" Prong

Alternatively, a state-court decision "involve[s] an unreasonable

application of" clearly established Supreme Court precedent if the state court

identifies the governing legal principle from the Court's decisions, but

applies it in an objectively unreasonable manner. *See Lockyer v. Andrade*,

538 U.S. 63, 75-76 (2003) (citing *Williams,* 529 U.S. at 409). The Supreme

Court has narrowly interpreted "objectively unreasonable," cautioning that

"[a]n *unreasonable* application of federal law is different from an *incorrect*

application of federal law." *Williams*, 529 U.S. at 410 (emphasis in

original). Accordingly, for habeas relief to be appropriate under the

"unreasonable application" prong, a state-court decision must be "more than

incorrect or erroneous." *Lockyer*, 538 U.S. at 75 ("It is not enough that a

federal habeas court, in its independent review of the legal question, is left

with a firm conviction that the state court was erroneous.") (citations and

internal quotation marks omitted); *Kibbe v. DuBois*, 269 F.3d 26, 35 (1st

Cir. 2001) ("[A] federal court cannot grant habeas relief simply because it

disagrees with or finds error in the state court's application of federal law"). In practice, the unreasonable application prong requires a petitioner meet a "'a substantially higher threshold' for obtaining relief than *de novo* review." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

As this Court has observed, "the gap between erroneous state court decisions and unreasonable ones is narrow [and] it will be the rare case that will fall into this gap." *Evans v. Thompson*, 518 F.3d 1, 6 (1st Cir.), *cert. denied*, 129 S. Ct 255 (2008). If it is "a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002).

In determining whether a state-court decision rises to the level of an unreasonable application of clearly established Supreme Court law, the "nature of the relevant rule" shapes the "range of reasonable judgment." *Renico*, 130 S. Ct. at 1864. If the legal rule is specific, the range of reasonable judgments is correspondingly narrow. *See Yarborough*, 541 U.S. at 664. Conversely, if the legal rule is general, the range of reasonable judgments is likely to be broad. *Id.* In other words, "'[t]he more general the rule' at issue — and thus the greater the potential for reasoned disagreement among fair minded judges — 'the more leeway state courts have in reaching

outcomes in case-by-case determinations.'" *Renico*, 130 S. Ct. at 1864

(quoting *Yarborough*, 541 U.S. at 664).

### 3. Review of Factual Determinations

Factual determinations of state courts are granted similar deference.

To satisfy § 2254(d)(2), a petitioner must show that the state's factual

determination was objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S.

322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)).

Objective unreasonableness is not merely an incorrect or erroneous decision.

*Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04

(7th Cir. 2003) ("petitioner's challenge to a decision based on a factual

determination will not succeed if the petitioner merely evidences that the

state court committed error.  Instead, he must further establish that the state

court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511,

518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under

§ 2254(d)(2) merely because it disagrees with a state trial court's factual

determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with

§ 2254(e)(1), which specifies both that "a determination of a factual issue

made by a State court shall be presumed to be correct," and that "[t]he

applicant shall have the burden of rebutting the presumption of correctness

by clear and convincing evidence." *Sanna v. DiPaolo*, 265 F.3d at 7. *See*

*also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2),

habeas petitioner must both disprove the factual finding by clear and

convincing evidence and demonstrate that the court's factual determination

was objectively unreasonable).

## II. THE SJC'S DECISION THAT THE MASSACHUSETTS CRIMINAL STATUTES REGARDING ILLEGAL POSSESSION OF FIREARMS PROPERLY DEFINE LICENSE AS AN AFFIRMATIVE DEFENSE AND DO NOT ASSIGN TO DEFENDANTS THE ULTIMATE BURDEN OF PROOF ON LICENSE POSSESSION IS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT.

### A. AEDPA Deference Should Apply to this Claim.

Petitioner urges this Court to review the claim that shifting the burden

to the defendant on the licensing element violated his federal due process

rights under the Fourteenth Amendment *de novo* because the SJC failed to

analyze the claim. However, as the Supreme Court has held, the state court

need not even be aware of Supreme Court precedent "so long as neither the

reasoning nor the result of the state-court decision contradicts them." *Early*

*v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). The Court recently expanded

on this concept, holding that AEDPA "does not require that there be an

opinion from the state court explaining the state court's reasoning" in order

for the deferential standard of review under § 2254 to apply in habeas review. *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

　　In this case, the SJC acknowledged Petitioner's due process claim and went on to explain that it would not diverge from its prior decisions which had held that the absence of a license was not an element of the crime and that the statute therefore did not create an unconstitutional presumption. *Powell*, 459 Mass. at 582, 946 N.E.2d at 124, citing *Commonwealth v. Jones*, 372 Mass. 403, 406, 361 N.E.2d 1308 (1977); *Commonwealth v. Colon*, 449 Mass. 207, 225-226, 866 N.E.2d 412 (2007).　*Jones*, in turn, included a lengthy discussion of the constitutionality of Massachusetts firearms statutes which place the burden of production of a valid license on the defendant.　Therefore, the SJC clearly considered and decided the due process claim and the deferential standard of review under AEDPA should be applied to this claim.

B.     The SJC's Decision That The Massachusetts Firearm Possession Statutes Did Not Violate The Due Process Clause Was A Reasonable Application Of Supreme Court Precedent.

      *1.     States are entitled to define the elements of crimes and to allocate the burden of production to the defendant on an affirmative defense.*

Mass. Gen. Laws ch. 278, § 7, provides that "[a] defendant in a criminal prosecution, relying for his justification upon a license … shall prove the same; and until so proved, the presumption shall be that he is not so authorized."[2]   On habeas review, Petitioner argues that this statute violates the Due Process Clause because it "creates a mandatory presumption which burdens a defendant to 'prove the [existence of a license].'"  (P. Br. 15-16).  Petitioner's argument, however, is based on an incorrect premise that the Massachusetts statutory scheme shifts the burden of proof to the defendant with respect to an essential element of the crime.  Because the Supreme Court traditionally defers to the states to define the elements of crimes and to allocate the burden of proof of an affirmative defense to a defendant, the SJC's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

---

[2]  According to Mass.R.Crim.P. 14(b)(3), a defendant is required to advance licensure as an affirmative defense during pretrial discovery.

20

In rejecting Petitioner's Due Process claim, the SJC noted that it has "repeatedly … held that in prosecutions under [Mass. Gen. Laws ch. 269, 10(a) and (h)], the Commonwealth does not need to present evidence to show that [Petitioner] did not have a license or FID card because the burden is on [Petitioner], under [Mass. Gen. Laws ch. 278, § 7] to come forward with such evidence." *Powell*, 459 Mass. at 582, 946 N.E.2d 114 (R.A. 343). The burden that the SJC imposed on Petitioner, however, was not a burden of persuasion on an element of the firearms offense; rather, it related to a burden of producing evidence of the existence of an affirmative defense under Mass. Gen. Laws ch. 278, § 7. *Id., citing Commonwealth v. Jones*, 372 Mass. at 406, 361 N.E.2d at 1310-1311.

The SJC also rejected Petitioner's contention that the Massachusetts legislature recast an element of the crime of unlicensed firearms possession as an affirmative defense, relying on *Jones* to explain that the "absence of a license is not 'an element of the crime,' as that phrase is commonly used." (S.A. 273). *Jones* further holds that, "[i]n the absence of evidence with respect to a license, no issue is presented with respect to licensing. In other words, the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the

defense does not exist." *Id.*; s*ee also Commonwealth v. Davis*, 359 Mass. 758, 758, 270 N.E.2d 925, 926 (1971) (holding Mass. Gen. Laws ch. 269, § 10, which regulates the possession of firearms, "proscribes certain inherently dangerous acts" and Mass. Gen. Laws ch. 278, § 7, "allows the defendant to show that his conduct is within an exception to the proscription"). The SJC declined to revisit its conclusion in *Jones* that, where Mass. Gen. Laws ch. 278, § 7, did not shift to the defendant the burden of proof on an element of the crime, it did not create an unconstitutional presumption under the Due Process Clause. (S.A. 273); *Powell*, 459 Mass. at 582, 946 N.E.2d at 124; *Jones*, 372 Mass. at 409-410, 361 N.E.2d at 1312).[3]

An affirmative defense has been defined in Massachusetts as a defense that "involves a matter of . . . justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence." *Gouse,* 461 Mass. at 805, (quoting *Commonwealth v. Vives*, 447 Mass. 537, 540-541, 845 N.E.2d 1241 (2006)). *See also* 1 W.R. LaFave, Substantive Criminal Law § 1.8(c) (1986) ("affirmative defense is one that may " 'negate guilt by cancelling out the existence of some required

---

[3] Following its decision in *Powell*, the SJC has continued to rely on the same reasoning in rejecting similar claims. *See Commonwealth v. Gouse*, 461 Mass. 787, 965 N.E.2d 774 (2012); *Commonwealth v. Eberhart*, 461 Mass. 809, 965 N.E.2d 791 (2012); *Commonwealth v. Jefferson*, 461 Mass. 821, 965 N.E.2d 800 (2012); *Commonwealth v. Norris*, 462 Mass. 131, 145, 967 N.E.2d 113 (2012).

element of the crime[,]' … provide a justification sufficient to overcome or mitigate criminal liability … [or assert] individual exceptions to substantive crimes"). The existence of a license falls into this category. As has been recognized by the SJC, there is no statewide entity responsible for approving firearm licenses; instead each local police department has the authority to determine which of its citizens should be granted a license. *Gouse, supra*, at 805. The local licensing authorities are required to notify the Criminal Justice Information Services ("CJIS"), specifically the Firearms Records Bureau, of licenses issued, G.L. c. 140, § 122A, but this database may not always be completely current given that it depends on reporting by diverse and autonomous local agencies. On the other hand, "the existence of a license is within a defendant's firsthand knowledge, and the act of producing it would not require his testimony." *Id*. at 806. *Compare Gonzalez v. Dickhaut*, 2010 WL 4955559 (D. Mass. Nov. 30, 2010)(Zobel, J.)(affirmative defense of license violated due process where petitioner's joint venturer had the firearm); *Commonwealth v. Humphries*, 465 Mass. 762, 770, 991 N.E.2d 652 (2013) (affirmative defense of license does not apply to joint venture possession of a firearm where establishing third party's lawful authority to carry a firearm is not "peculiarly within the knowledge of the defendant").

The Supreme Court has actually found it constitutionally permissible for a state to place the burden of *proof* of an affirmative defense upon a defendant. *See Martin v. Ohio*, 480 U.S. 228 (1987) (affirming that Constitution is not offended by state requirement that defendant prove affirmative defense, applying holding of *Patterson v. New York*, 432 U.S. 197 (1977)). In *Patterson*, the defendant, who had been convicted of second-degree murder, challenged a New York statute that placed on him the burden of proving by a preponderance of the evidence the affirmative defense of acting under the influence of extreme emotional distress in order to reduce the crime to manslaughter. The Court "decline[d] to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Id*. at 210. "Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch." *Id.* Accordingly, the Court held that it would

> not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion

such a rule in this case and apply it to the statutory defense at issue here."

*Id. See also Gilmore v. Taylor,* 508 U.S. 333, 341 (1993) (affirming rule that states may place on defendants the burden of proving affirmative defenses).

The Supreme Court, in fact, has traditionally emphasized "the preeminent role of the States in preventing and dealing with crime and the reluctance of the Court to disturb a State's decision with respect to the definition of criminal conduct and the procedures by which the criminal laws are to be enforced in the courts, including the burden of producing evidence and allocating the burden of persuasion." *Martin*, 480 U.S. at 232, citing *Patterson*, 432 U.S. at 201-202 (Court should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual states). Instead, the Court has recognized instances, like the present case, where there is "a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to everyone who is unable to bring himself within the range of an exception," as justifying the transfer of the burden of an affirmative defense. *Morrison v. People of State of California,* 291 U.S. 82, 91 (1934). Although the Court recognized that "[t]he list is not exhaustive[, and] [o]ther instances may have arisen or may develop in the future," it noted that

"[i]nstances of the application of this principle can be cited in profusion."

*Id.* at 91 n.4.[4]

> It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine v. California,* 347 U.S. 128, 134 [74 S.Ct. 381, 384, 98 L.Ed. 561] (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Speiser v. Randall,* 357 U.S. 513, 523 [78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460] (1958); *Leland v. Oregon,* 343 U.S. 790, 798 [72 S.Ct. 1002, 1007, 96 L.Ed. 1302] (1952); *Snyder v. Massachusetts,* 291 U.S. 97, 105 [54 S.Ct. 330, 332, 78 L.Ed. 674] (1934)." *Patterson v. New York, supra,* 432 U.S., at 201–202, 97 S.Ct., at 2322.

> Accord, *Martin v. Ohio,* 480 U.S. 228, 232, [107 S.Ct. 1098, 1101, 94 L.Ed.2d 267] (1987).  As *Patterson* suggests, because the States have considerable expertise in matters of criminal procedure and the criminal process is grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to legislative judgments in this area.

---

[4]    *Morrison* listed typical examples of the time to include:  (1) where defendant, having game in his possession in violation of statute whereby possession was generally a crime, was held to have burden of proving special qualifications; (2) prosecution for bigamy, where, on proof that defendant had contracted a second marriage during lifetime of his first wife, burden was laid on him to prove exceptional circumstances that would have made marriage lawful; and (3) defendant subject to burden of producing license or permit for business or profession that would otherwise be illegal. *Id*.

*Medina v. California*, 505 U.S. 437, 445-46 (1992). Therefore, where the Supreme Court has upheld a state's allocation of the burden of proof on an affirmative defense under the Due Process Clause , the Massachusetts statutory scheme for illegal firearm possession, which only allocates a burden of production to the defendant on an affirmative defense, must necessarily also pass constitutional muster.

License is, in fact, a common affirmative defense in many contexts. *Commonwealth v. Gouse*, 461 Mass. at 788, 965 N.E.2d at 805, citing to *State v. Valinski*, 756 A.2d 1250 (Conn. 2000) (special operator's permit affirmative defense to offense of driving with a suspended license); Mass R. Civ. P. 8(c)(listing license among affirmative defenses party in civil action must include in response to pleadings) ; *Worldwide Church of God v. Philadelphia Church of God, Inc*., 227 F.3d 110, 1114 (9th Cir. 2000), *cert denied*, 532 U.S. 958 (2001) ("The existence of a license creates an affirmative defense to a claim of copyright infringement"). Its application to firearm possession charges has been fully recognized in other jurisdictions as well. *Gouse, supra*, citing to *Watt v. State*, 31 So.3d 238, 242 (Fla. Dist.Ct.App. 2010), (quoting *State v. Robarge*, 450 So.2d 855, 856 (Fla. 1984)); *Taylor v. State*, 578 N.E.2d 664, 666 (Ind. 1991), citing *Washington*

*v. State*, 517 N.E.2d 77 (Ind. 1987). *See also Lively v. State*, 427 A.2d 882, 884 (Del. 1981) ("possession of a license is best viewed as a defense to the charge of Carrying a Concealed Weapon, since it is a matter more immediately within the knowledge of the defendant himself, and more readily proven by him"); *State v. Carter*, 255 P.3d 721 (Wash. 2011) (identifying as affirmative defense exemption to unlawful possession of machine gun charge for those properly licensed). The fact that other jurisdictions have reached similar conclusions as to the affirmative defense supports the reasonableness of the SJC's decision in this case.

In light of the foregoing, the SJC's decision rejecting Petitioner's Due Process claim does not violate AEDPA. The SJC's recognition that Mass. Gen. Laws ch. 278, § 7, does not violate the Due Process Clause is not contrary to, or an unreasonable application of, *Martin* and its progeny, and Petitioner's habeas claim must be denied.

### 2. *In the alternative, the burden-shifting presumption under Massachusetts law is not unconstitutional.*

The District Court rejected the SJC's holding that license possession was an affirmative defense and analyzed M.G.L. c. 278, § 7 as a burden-shifting presumption. (Add. 87-93). Under this analysis, the Court found that the presumption set forth in the statute is merely a burden of production which does not shift the ultimate burden of persuasion to the defendant, and

28

therefore survives constitutional scrutiny. Should this Court reject the

respondent's primary argument in the prior subsection, it should deny habeas

relief based on this conclusion.

The Supreme Court set forth the test for determining the validity of

statutory presumptions in *Tot v. United States*, 319 U.S. 463, 467 (1943),

holding that "a rational connection between the facts proved and the fact

presumed" must exist. Analysis of the "comparative convenience" of

producing the evidence of the ultimate fact is a corollary to this test. *Id*.

The Court subsequently categorized statutory presumptions into two distinct

types: permissive and mandatory. *County Court of Ulster County N.Y. v.

Allen*, 442 U.S. 140, 157 (1979). A permissive presumption "allows but

does not require the trier of fact to infer the elemental fact from proof by the

prosecutor of the basic one and places no burden of any kind on the

defendant." *Id*. A mandatory presumption "tells the trier of fact that he or

she *must* find the elemental fact upon proof of the basic fact, at least unless

the defendant has come forward with some evidence to rebut the presumed

connection between the two facts." *Id*. (emphasis in original). Such

mandatory presumptions can be subdivided into two further categories: those

that "merely shift the burden of production to the defendant following the

satisfaction of which the ultimate burden of persuasion returns to the

prosecution;" and those "that entirely shift the burden of proof to the defendant." *Id*. at 157, n.16.

As the District Court found, there is an exception for mandatory presumptions that merely shift the burden of production to a defendant but leave the ultimate burden of persuasion on the prosecution. *Id.* Where the burden of production may be satisfied by a low showing, the impact of such a "nominally mandatory burden" will be more akin to a permissive inference. *Id*. (Add. 89).

Petitioner in this case was tried without a jury and therefore there were no jury instructions with which to assess the presumption. The statute itself, M.G.L. c. 278, § 7, directs that unless one charged with unlawfully engaging in an activity requiring licensure provides evidence of a license, "the presumption shall be that he is not so authorized." This language appears to create a mandatory presumption. Massachusetts courts interpreting the statute, however, have been clear that this presumption does not place a burden of persuasion on a defendant. Rather, it shifts the burden of *production* to the defendant on the issue of licensing. If evidence of a license is presented by a defendant, "the burden is then on the prosecution to persuade the trier of fact beyond a reasonable doubt that the defense does not exist." *Commonwealth v. Jones*, 372 Mass. at 406, 361 N.E.2d 1308; *see*

*also Commonwealth v. Couture*, 407 Mass. 178, 182, 552 N.E.2d 538

(1990).  Therefore, the presumption "never totally remove[s] the ultimate

burden of proof beyond a reasonable doubt from the prosecution." *Allen*,

442 U.S. at 157, n.16.  *See McCandless v. Beyer*, 835 F.2d 58, 61 (3d Cir.

1987) (upholding similar presumption in NJ statute under due process

analysis).

 Contrary to Petitioner's assertion, it is entirely rational to presume that

a defendant charged with illegal possession of a firearm would come

forward with a valid license and the failure to do so entitles the trier of fact

to presume that he does not have a valid license.  *See Commonwealth v.

Jones*, 372 Mass. at 409, 361 N.E.2d at 1312.  The existence of a license is

easily demonstrated by a defendant and therefore a trier of fact can make a

rational connection between the "facts proved (possession and carrying of a

firearm) and the fact presumed (the absence of a license)" (Add. 91).  The

fact that electronic record-keeping has made it easier for the prosecution to

verify whether a defendant has a valid license is not a controlling

consideration.  *See Tot, supra*, at 467.

 Habeas relief should be denied on this claim.

**III.  HABEAS RELIEF SHOULD BE DENIED WHERE THE MASSACHUSETTS CRIMINAL STATUTES REGULATING FIREARMS DO NOT VIOLATE THE SECOND AMENDMENT BECAUSE THEY DO NOT IMPOSE AN ABSOLUTE BAN ON FIREARM POSSESSION.**

A.      Second Amendment rights in light of *Heller* and *McDonald*.

The Massachusetts firearms licensing scheme also comports with the Second Amendment in light of recent Supreme Court caselaw.  In the last five years, the Supreme Court has decided two major cases interpreting the Second Amendment.  In those cases, the Court held that "law-abiding, responsible citizens" have the right to possess firearms for self-defense in the home, but, importantly, the Court did not ban all regulations of firearms. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Court struck down as unconstitutional a District of Columbia statute that included an "absolute prohibition of handguns held and used for self-defense in the home." *Id.* at 636.  The statutory scheme at issue banned handgun possession by making it a crime to carry an unregistered firearm and prohibiting the registration of handguns. *Id.* at 574-575.  It also required residents to keep lawfully owned firearms unloaded and disassembled or bound by a trigger lock or similar device. *Id.*  In considering the constitutionality of the statute, the Court announced for the first time that the Second Amendment protects an individual right to keep and bear firearms in

one's home for the purpose of self-defense, not simply a collective right to

possess and carry arms for the purpose of maintaining a state militia.  *Id*. at

594-620.  The Court characterized this right as "the right of law-abiding,

responsible citizens to use arms in defense of hearth and home."  *Id*. at 635.

The *Heller* court explicitly recognized that "[l]ike most rights, the right

secured by the Second Amendment is not unlimited. . . . [and] was not a right to

keep and carry any weapon whatsoever in any manner whatsoever and for

whatever purpose."  *Id*. at 626.  In fact,

> nothing in [the] opinion should be taken to cast doubt on
> longstanding prohibitions on the possession of firearms by
> felons and the mentally ill, or laws forbidding the carrying
> of firearms in sensitive places such as schools and
> government buildings, or laws imposing conditions and
> qualifications on the commercial sale of arms.

*Id*. at 626-27.  In other words, the Court declared that a citizen's Second

Amendment right did not prohibit a variety of laws including, without limitation,

laws like those described in the opinion.

*Heller*'s holding, since it applied to the District of Columbia, did not

apply the Second Amendment right to bear arms to the individual states.  In

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Court addressed

Chicago firearms laws that were similar to the District of Columbia's in

*Heller*.  The Court acknowledged that the Second Amendment protects the

fundamental right to possess a handgun in the home for the purpose of self-

defense, *see Heller*, and concluded that the Due Process Clause of the Fourteenth Amendment therefore incorporates the Second Amendment right recognized in *Heller* to the states.  *Id*. at 3050.

Federal circuit courts, including this one, have consistently recognized that "*Heller* established that the possession of operative firearms for use in defense of the home constitutes the 'core' of the Second Amendment." *Hightower v. City of Boston*, 639 F.3d 61, 72 (1st Cir. 2012), citing *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012); *United States v. Barton*, 633 F.3d 168, 170 (3d Cir. 2011); *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010).[5] *See also Chardin v. Police Com'r of Boston*, 465 Mass. 314, 322, 989 N.E.2d 392 (2013).

> B. <u>The Massachusetts statutory scheme constitutes a proper regulation on the possession and carrying of firearms.</u>

Petitioner, in a related argument to his due process claim discussed *supra*, claims that defining the elements of the firearm offenses without the necessity of proof that the defendant is unlicensed also violates the Second

---

[5]  *See also Hightower, supra*, at 72 n.8 for a compilation of cases dealing with whether the scope of the Second Amendment applies to carrying firearms outside the home without reference to protection of the home.

Amendment.  Although the SJC discussed the relevant Supreme Court caselaw including *Heller* and *McDonald*, it did not specifically address this claim.  Because the Massachusetts licensing statues do not create an absolute ban on firearm possession, Petitioner's claim fails on the merits regardless of whether the SJC's decision is reviewed under the standards of 28 U.S.C. § 2254(d) or *de novo*.  *See Wright v. Marshall*, 656 F.3d 102, 107-108 (1st Cir. 2011), *citing Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001).

The Massachusetts statutory scheme cannot be classified as an "absolute prohibition" or a "general prohibition" in *Heller/McDonald*  terms. The SJC correctly recognized that the Supreme Court did not hold that the Second Amendment bans all regulations of firearms.  *Powell*, 459 Mass. at 586.  *See Heller*, 554 U.S. at 572 ("[D.C.] must permit Heller to register his handgun and must issue him a license to carry it in the home.").

*Heller*'s rejection of what at times is referred to as a "general prohibition" and at others an "absolute prohibition," can only be understood in the context of the Court's entire opinion in that case.  The prohibition of handguns in *Heller* was unconstitutional because of its effect of preventing every member of the public from lawfully possessing an operable handgun in the home.  Thus, *Heller*'s use of the terms "general prohibition" and

"absolute prohibition" were clearly inspired by the effects of the statutory scheme.

M.G.L. c. 140, § 131, governs licenses to carry firearms[6] and allows the license holder to possess and carry firearms as well as rifles and shotguns pursuant to different categories, Class A or Class B.  *See Hightower v. City of Boston*, 693 F.3d at 65-67 (describing Massachusetts firearms licensing scheme).  The penalty provision of the Massachusetts statute regarding the unlawful carrying of firearms also contains an exemption for possession that occurs while "present in or on his residence."  M.G.L. c. 269, § 10.[7]

In addition, in Massachusetts a Firearm Identification ("FID") card "allows the holder to own, transfer, or possess a firearm in his residence or place of business."  *Hightower*, 693 F.3d at 66, (quoting *Commonwealth v. Gouse*, 461 Mass. 787, 965 N.E.2d 774, 785 n.14 (2012)).  The Massachusetts  licensing regimes clearly allow an avenue for "responsible, law-abiding" member of the public to lawfully possess a firearm, an option that wasn't available to the people of Washington, D.C. at the time of *Heller*.

---

[6] A firearm is defined in M.G.L. c. 140, § 121, as a pistol, revolver, or other weapon with a barrel of less than 16 inches or 18 inches in the case of a shotgun.  The firearm for which Petitioner was convicted of possessing was a .22 caliber revolver.  *Powell*, 459 Mass. at 573 n. 3, 946 N.E.2d at 118 n. 3.

[7]    Unlawful possession of a firearm in the home or business is governed by M.G.L. c. 269, § 10(h).

The statutes at issue in *Heller* and *McDonald* precluded any opportunity the public had for such legal possession; the Massachusetts firearms licensing statutes afford this opportunity. *See Hightower*, 693 F.3d at 65-67. Thus, the substantive Second Amendment right is not breached. Petitioner is wrong to contend that *Heller/McDonald* do not permit Massachusetts to license the carrying of handguns in public. *See Hightower, supra*, at 73-74 ("licensing of the carrying of concealed weapons is presumptively lawful"). Three other circuits have rejected Second Amendment challenges to firearms licensing schemes that are more restrictive than the Massachusetts scheme. *See Drake v. Fiko*, 724 F.3d 426, 431 (3d Cir. 2013) (NJ statute requiring applicants for license to publicly carry a handgun for self-defense to show "justifiable need"); *Woolard v. Gallagher*, 712 F.3d 865, 869 (4th Cir. 2013) (Maryland statute requiring applicant for handgun permit to show "apprehended danger"); *Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) (NY statute requires applicants for full-carry handgun permits to demonstrate "proper cause (i.e. special need for protection)).

To extend the Second Amendment into the regulatory realm of this case would infringe on the important right of states to regulate dangerous weapons and contradict the historical deference accorded the states in such endeavors. The relief Petitioner requests would also require this Court to

declare a new constitutional right which has not yet been announced by the Supreme Court. *See Kater v. Maloney*, 459 F.3d 56, 63 (1st Cir. 2006).

Therefore, Petitioner's claim that the presumption found in M.G.L. c. 278, § 7 violates the Second Amendment must fail. Massachusetts has properly defined its criminal firearm possession statutes in accordance with the applicable Supreme Court caselaw interpreting the Second Amendment . *Heller* and *McDonald* expressly held that the Second Amendment prohibits a general prohibition on the possession of firearms within the home and has not recognized any constitutional right to carry a firearm outside the home. Petitioner challenges his conviction based on his possession of a firearm outside the home; therefore his claims fail at the threshold. Moreover, the Supreme Court has made it clear that licensing schemes such as the Massachusetts scheme at issue are not prohibited by the Second Amendment.

IV.   **THE SJC'S DECISION THAT TRIAL COUNSEL WAS NOT INEFFECTIVE IN FAILING TO FILE A MOTION TO SUPPRESS PETITIONER'S STATEMENT TO A POLICE OFFICER WHILE IN CUSTODY WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT PRECEDENT.**

An ineffective assistance of counsel claim predicated on counsel's alleged failure to competently litigate a Fourth Amendment issue is governed by the standard established in *Kimmelman v. Morrison*, 477 U.S. 365 (1986). *See Barry v. Ficco*, 392 F.Supp.2d 83, 94-95 (D. Mass. 2005), *citing Kimmelman*, 477 U.S. at 374-375. As the Supreme Court stated:

> The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Id*. at 94, (quoting *Kimmelman*, 477 U.S. at 374-375, *citing Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Accordingly on habeas review, "[w]here the claimed omission in ineffective representation is the failure to file a suppression motion, the inquiry involves dual assessments. '[T]he

defendant must show that the constitutional claim has merit and that there was a reasonable possibility that the verdict would have been different without the excludable evidence.'" *Barry*, 392 F. Supp.2d at 94-95, (quoting *Commonwealth v. Anderson*, 58 Mass. App. Ct. 117, 127-128 (2003)), (quoting *Commonwealth v. Fletcher*, 52 Mass. App. Ct. 166, 169 (2001)).

Petitioner claims that his counsel was ineffective in failing to file a motion to suppress his statements at the time of his arrest. The SJC reasonably concluded that the failure to file such a motion did not deprive him of "an otherwise available, substantial ground of defence." *Powell*, 459 Mass. at 583, (quoting *Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878 (1974)). This Court has held that the standard under *Saferian* is sufficient to protect Petitioner's constitutional rights. *See Castillo v. Matesanz*, 348 F.3d 1, 13 (1st Cir. 2003) (holding "'manifestly unreasonable' standard is not contrary to the standard set forth in Strickland"); *Ouber v. Guarino*, 293 F.3d 19, 32 (1st Cir. 2002) ("Although *Strickland* and *Saferian* do not employ identical phraseology, we have described those variations as 'minor' and have concluded that, for habeas purposes, *Saferian* is a functional equivalent of *Strickland*." (quoting *Scarpa v. DuBois*, 38 F.3d 1, 7-8 (1st Cir. 1994)); *see also Commonwealth v. Fuller*, 394 Mass. 251, 256 n.3, 475 N.E.2d 381, 385 n.3 (1985) ("If the *Safarian*

test is met, the federal test is necessarily met as well"). Since the standard requires a defendant to fulfill both prongs, the SJC was not required to address both performance and prejudice aspects if the petitioner failed to meet one of the two. *See Strickland*, 466 U.S. at 697; *see also Delaney v. Bartec*, 510 F.3d 32, 39 (1st Cir. 2008) (rejecting ineffective assistance claim on prejudice grounds without addressing counsel's performance).

Officer Blas testified at trial that he handcuffed Petitioner and questioned him without reading Petitioner his *Miranda* rights. (Add. 68). In response to Officer Blas's questions, Petitioner stated that he did not have a firearm. *Id.* Trial counsel filed a motion to suppress certain physical evidence found at the scene, but failed to move to suppress Petitioner's statement to Officer Blas. (Add. 65, 68).

Petitioner argues that trial counsel's failure to file a suppression motion regarding Petitioner's statement to Officer Blas constituted ineffective assistance of counsel because if the statement had been suppressed, the Commonwealth could not have demonstrated his consciousness of guilt or met its burden of proof regarding the charge of possession of a firearm without a license. (D. Br. 35). The SJC found the ineffective assistance claim meritless because "[e]ven if [Petitioner's] trial counsel had filed a motion to suppress that was allowed, the absence of the

41

statement at [Petitioner's] trial did not likely deprive him of 'an otherwise available, substantial ground of defence ....'" (Add. 69). Without Petitioner's statement to Officer Blas, the fact finder could have inferred consciousness of guilt from "testimony from both officers that they saw the [petitioner] holding a firearm" and also from Petitioner's behavior; he attempted to conceal a weapon from the officers and ran from them while doing so. *Id*. Moreover, there was testimony from both officers that they saw Petitioner holding a firearm. *Id*. Nothing about the SJC's decision demonstrates an "increment of incorrectness beyond error" that would warrant the extraordinary relief that habeas provides. *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). Petitioner's claim, therefore, must fail because he cannot establish that the SJC's adjudication of his ineffective assistance claim was contrary to, or an unreasonable application of *Kimmelman*.

**V.    PETITIONER'S CLAIM THAT THE FIREARMS LICENSING STATUTES VIOLATE THE SECOND AMENDMENT AND THE EQUAL PROTECTION CLAUSE BY IMPOSING AN AGE LIMIT OF 21 IS PROCEDURALLY DEFAULTED AND PETITIONER HAS FAILED TO SHOW CAUSE AND PREJUDICE TO EXCUSE THE DEFAULTS.**

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, 130 S.Ct. 612, 614-615 (2009)  (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).  "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits."  *Walker v. Martin*, 131 S.Ct. 1120, 1127 -1128 (2011), *citing Wainwright v. Sykes,* 433 U.S. 72, 81-82 (1977). A state procedural rule is "adequate" if it is regularly or consistently applied by the state courts.  *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), *citing Hathorn v. Lovorn*, 457 U.S. 255, 262-263 (1982).  The rule is "independent" if it does not depend on a federal constitutional ruling.  *Id., citing Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).  The Court in *Coleman* affirmed that the doctrine may apply even where the state procedural default is offered as an "alternative" basis for a decision.  *Coleman*, 501 U.S. at 733. The same may be said of the prior decisions on which *Coleman* relied.  See

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Michigan v. Long*, 463 U.S.

1032, 1041 (1983).  As the *Harris* Court explained:

> [A] state court need not fear reaching the merits of a federal
> claim in an *alternative* holding.  By its very definition, the
> adequate and independent state ground doctrine requires the
> federal court to honor a state holding that is a sufficient basis
> for the state court's judgment, even when the state court also
> relies on federal law. . . . In this way, a state court may reach a
> federal question without sacrificing its interests in finality,
> federalism, and comity.

489 U.S. at 264 n.10.  In such a case, "[c]onsiderations of comity and

federalism bar the federal court's review."  *Brewer v. Marshall,* 119 F.3d

993, 999 (1st Cir. 1997), *citing Lambrix v. Singletary*, 520 U.S. 518, 523-24

(1997).

In cases involving such a procedural default, "federal habeas review

of the claims is barred unless the prisoner can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal

law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  The

jurisdictional nature of the independent and adequate state ground inquiry

requires that it be addressed by this Court at the outset.  *Lambrix v.*

*Singletary,* 520 U.S. at 523.

In Massachusetts, "[f]rom an early day it has been an established

principle . . . that only persons who have themselves suffered, or who are in

danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government." *Kaplan v. Bowker,* 333 Mass. 455, 459, 131 N.E.2d 372 (1956)." "'Only one whose rights are impaired by a statute can raise the question of its constitutionality, and he can object to the statute only as applied to him.'" *Commonwealth v. Gordon,* 354 Mass. 722, 725, 242 N.E.2d 399 (1968) (quoting *Massachusetts Commission Against Discrimination v. Colangelo,* 344 Mass. 387, 390, 182 N.E.2d 595 (1962)), *citing United States v. Raines,* 362 U.S. 17, 21 (1960) ("one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional"). A licensing scheme, unless void on its face, imposes legal harm only on one who applies for a license and is unlawfully denied. *Gordon*, 354 Mass. at 725, 242 N.E.2d at 401.[8]

---

[8]     Petitioner claims that the SJC's decision that he lacked standing to challenge the FID card and firearm licensing statutes is eliminated by the doctrine of futility (Pet. Br. At 36). However, as argued above, standing constitutes a procedural default and, in any event, Petitioner has not shown that applying for an FID card or a firearms license would have been futile. M.G.L. c. 140, § 129B allows for eighteen year olds to obtain an FID card. Moreover, Petitioner has not shown that he would have been denied a firearms license based on his age alone. *See Powell*, 459 Mass. at 590; 946 N.E.2d at 129-130.

Application of the foregoing principles to the instant case supports the Respondent's position. Here, Petitioner admits that he did not apply for an FID card or a license to carry. The SJC concluded that because of this fact, Petitioner may not challenge his convictions under either Mass. G.L. c. 269, § 10 (a) or § (h)(1). *Powell,* 459 Mass. at 589-591, 946 N.E.2d at 129-130. Thus, the SJC's decision based on Petitioner's lack of standing to challenge these statutes because he did not apply for either a FID card or a license to carry constitutes an adequate state-law ground. The SJC's decision also constitutes an independent state-law ground because it clearly does not depend on a federal constitutional ruling.

Additionally, the alternative basis for the decision offered by the SJC – that the two Massachusetts firearm statutes at issue do not violate either the Second Amendment or the Equal Protection Clause because they do not prohibit all gun possession, as did the ordinances in *Heller* and *McDonald* – does not operate as a waiver of the underlying procedural default. *Burks v. Dubois*, 55 F.3d 712, 716, n. 2 (1st Cir. 1995). Therefore, procedural default must be found to bar consideration of the issues here.[9]

---

[9]    The district court should not have conducted its own review to assess whether the state court properly applied an undisputedly adequate and valid state-law procedural rule in light of the clearly established principle that a federal habeas court "'does not have license to question a state court's finding of procedural default' or to question 'whether the state court

There is no basis to excuse application of the procedural default rule in Petitioner's case. "The default may be excused only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice." *Glacken v. Dickhaut*, 585 F.3d 547, 551 (1st Cir. 2009), *citing Obershaw v. Lanman,* 453 F.3d 56, 68 (1st Cir. 2006). In this context, "cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Burks,* 55 F.3d at 717 (citations omitted).

---

properly applied its own law.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010), quoting *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995); *see also, e.g.*, *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000) (stating same principle); *Clemons v. Luebbers*, 381 F.3d 744, 748, 750-51 (8th Cir. 2004) (holding that, where state court unequivocally applied procedural bar to petitioner's claim, district court erred in finding "that this claim was properly preserved at trial, and that the Missouri courts *improperly* applied a procedural bar"; explaining that "federal courts do not look at whether state courts have correctly applied their own procedural rules" but "simply determine whether those procedural rules were applied to bar the claim," except in circumstances not present), citing *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997), and *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (emphasis in original); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("[The petitioner] argues that the trial court improperly applied [a state procedural rule] in holding [his] claims defaulted, since the conditions for inferring waiver under the rule were not satisfied. Federal habeas courts lack jurisdiction, however, to review state court applications of state procedural rules.").

Prejudice requires the petitioner to demonstrate "not merely that the errors at

. . . trial created a possibility of prejudice, but that they worked to his actual

and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." *Ortiz v. DuBois,* 19 F.3d 708, 714 (1st Cir.

1994) (quoting *Untied States v. Frady,* 456 U.S. 152, 170 (1982)).  The

miscarriage-of-justice exception "is a narrow exception to the cause-and-

prejudice imperative, seldom to be used, and explicitly tied to a showing of

actual innocence." *Burks,* 55 F.3d at 717.

Here, Petitioner did not address the issue of procedural default in his

brief and thus, does not claim that there was cause and prejudice to excuse

the defaults, or that default would result in a miscarriage of justice.

Additionally, Petitioner has not, nor can he, show a fundamental miscarriage

of justice in light of the overwhelming evidence against Petitioner as

reiterated above, and because there is no merit to Petitioner's claims that the

firearm statutes under which he was convicted violate the Second

Amendment or the Equal Protection Clause.  As the SJC noted,

> the [petitioner] overlooks that the right secured by the Second
> Amendment is not unlimited. Both *Heller* and *McDonald* make
> that point clear. See *McDonald, supra* at 3047; *Heller, supra* at
> 626, 128 S.Ct. 2783.   The Court also emphasized in those
> decisions that the Second Amendment does not ban all
> regulation of firearms.  See *McDonald, supra; Heller, supra* at
> 626–627, 128 S.Ct. 2783.  Rather, the Court only went so far as
> to say that the Second Amendment right to keep and bear arms

48

was infringed on when legislation effectuated a total ban of handgun possession, or prevented the use of an operable firearm, in the home. *Heller, supra* at 629–630, 128 S.Ct. 2783.

*Powell*, 459 Mass. at 589, 946 N.E.2d at 129.

Regarding Petitioner's Equal Protection claim, the SJC noted "that *Heller* stands for the proposition that some categorical bans on firearm possession or use are constitutional, including regulations concerning who may possess a right to keep and bear arms." *Id.* at 590-591, 946 N.E.2d at 130. *See Glacken*, 585 F.3d at 551 (petitioner's claim was procedurally defaulted and court did not consider merits of the claim where petitioner did not address the default issue and thus, failed to show cause and prejudice or that the default would result in a miscarriage of justice); *Burks*, 55 F.3d at 718, *citing Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). Thus, Petitioner cannot overcome the procedural default bar to habeas review of these claims.

If this Court rejects the respondent's arguments regarding procedural default and concludes that the SJC did not rely upon procedural grounds in denying petitioner's claim, then the petitioner's claim fails on the merits

49

regardless of whether the SJC's decision is reviewed under the standards of

28 U.S.C. § 2254(d) or *de novo*. *See Wright v. Marshall*, 656 F.3d at 107-

108, *citing Fortini v. Murphy*, 257 F.3d at 47. Petitioner's Second

Amendment claim is based on the assumption that the *Heller* and *McDonald*

decisions protect a personal right to keep and bear arms for lawful purposes

and that the core of the Second Amendment right is self-defense, which

arises both in and out of the home. As set forth in Argument III, *supra*, the

SJC properly followed the widely-held interpretation of *Heller* and

*McDonald* that the Second Amendment protects only the right to possess a

firearm in the home. *See Hightower v. City of Boston*, 639 F.3d at 72 for a

list of circuits which follow this interpretation. *See also United States v.*

*Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009) (a narrowly drawn federal

prohibition on handgun possession by juveniles that contains exceptions for

self- and other-defense in the home, national guard duty, and hunting,

among other things does not offend the Second Amendment); *Kachalsky v.*

*County of Westchester*, 701 F.3d at 94 (holding that outside the home,

firearm rights have always been more limited because public safety interests

often outweigh self-defense interests); *United States v. Masciandaro*, 638

F.3d 458, 470 (4th Cir. 2011)(same).

Under Massachusetts' firearms statutes, a person must be twenty-one years or older to obtain a license to carry a firearm. M.G.L. c. 140, § 131(d)(iv). Petitioner argues that this provision constitutes a violation of the Second Amendment and equal protection rights of eighteen to twenty year olds. However, as set forth *supra*, the Supreme Court has held that the rights secured by the Second Amendment are not unlimited; and it has never recognized the right to carry a firearm in public as a "core right" guaranteed by the Constitution. In neither *Heller* nor *McDonald* did the Court preclude states from regulating the possession or licensing of firearms. Nor did either case call into question the validity of a statute creating a minimum age to obtain a license to carry a firearm outside the home. See *United States v. Rene E.*, 583 at 16.

In fact, Massachusetts' prohibition on granting licenses to persons under the age of twenty-one is a regulatory measure similar to the types specifically identified in *Heller* and *McDonald* as presumptively valid. *See McDonald*, 130 S.Ct. at 3047 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the

51

commercial sale of arms'") (quoting *Heller*, 554 U.S. at 626-627). The Court also differentiated between the fundamental right to possess a firearm inside one's home for self-defense and the need to regulate the possession and carrying of a firearm on a public street or in public areas. *Heller*, 554 U.S. at 626.

Moreover, there is no constitutional or common-law rule that gives eighteen-year-olds the right to be considered adults for all purposes. *See Kimel v. Bd. Of Regents*, 528 U.S. 62, 83 (2000) (age is not a suspect class under the Equal Protection Clause). As a consequence, "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Id.* The fact that there are so many statutes and constitutional amendments, many of which are cited by Petitioner, granting citizens of a certain age specific rights shows that such pronouncements are a result of policy considerations made on a case-by-case basis. Petitioner has failed to prove that the facts on which the age classification in the Massachusetts statute are based "could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 84 (quoting *Vance v. Bradley*, 440 U.S. 93, 111 (1979)).

Federal and state legislatures also have not adopted a broad requirement that eighteen-year-olds be treated as adults. For example, under federal law it is unlawful to sell or deliver any firearm, other than a shotgun or rifle, to an individual less then twenty-one years of age. 18 U.S.C. 922(b)(1). Furthermore, the National Minimum Drinking Age Act allows the federal government to withhold funds to states that allow persons under age twenty-one to purchase or publicly possess alcoholic beverages. 23 U.S.C. 158(a)(1); *South Dakota v. Dole*, 483 U.S. 203, 208 (1987) (finding provision of statute is "designed to serve the general welfare"). Massachusetts also prohibits those under twenty-one from purchasing alcohol. M.G.L. c. 138, § 34A; *see Tobin v. Norwood Country Club, Inc.*, 422 Mass. 126, 134, 661 N.E.2d 627, 632 (1996) ("recognition of the danger of furnishing alcohol to minors" is public policy identified by statute). Therefore, federal and state legislatures have recognized the dangerousness inherent in certain activities and chose to limit such activities to a certain age. In this context, the Massachusetts firearm licensing statute is a valid regulatory measure and does not violate the Second Amendment or equal protection rights of eighteen-to-twenty year olds.[10]

---

[10] Both the District Court and the Petitioner in his brief cite to various statistics in discussing the equal protection argument. Respondent reiterates that this Court reviews *de novo* the district court's denial of a petition for a

Finally, Petitioner's facial challenge to the firearms licensing statutes is not appropriate in a federal habeas action.  *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993).  See *Estelle v. McGuire,* 502 U.S. 62, 68  (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Moreover, under *United States v. Salerno,* 481 U.S. 739, 745 (1987), a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.,* that the law is unconstitutional in all of its applications.  While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a " 'plainly legitimate sweep.' " *Washington v. Glucksberg,* 521 U.S. 702, 739–740, and n. 7 (1997) (Stevens, J., concurring in judgments).  As set forth, *supra*, Petitioner cannot meet this burden where the Massachusetts firearms licensing scheme meets constitutional standards.

---

writ of habeas corpus. *Aspen v. Bissonnette*, 480 F.3d at 573. "[T]he district court opinion, while helpful for its reasoning, is entitled to no deference." *Healy v. Spencer*, 453 F.3d at 25.  Moreover, the factual and statistical assertions made by Petitioner were not part of the state court record and should not be considered on habeas review.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).  Moreover, these statistics may cast Petitioner's claim in a new factual light, and therefore the claim would be unexhausted because it wasn't raised in the state court.  *See Rose v. Lundy*, 455 U.S. 509, 518-519 (1982).

## <u>CONCLUSION</u>

For these reasons, this Court should affirm the district court's judgment denying the habeas corpus petition.

Respectfully submitted,
MARTHA COAKLEY
ATTORNEY GENERAL


/s/ Susanne G. Reardon
SUSANNE G. REARDON
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2832
First Circuit No. 23064
September 30, 2013                susanne.reardon@state.ma.us

# STATUTORY ADDENDUM

## UNITED STATE CODE, TITLE 28

### SECTION 1291 - FINAL DECISIONS OF THE DISTRICT COURTS

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where direct review may be in the Supreme Court.  The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

### SECTION 2253 - APPEAL

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

## SECTION 2254 - STATE CUSTODY; REMEDIES IN FEDERAL COURTS

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State;  or

(B)(i) there is an absence of available State corrective process;  or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

(A) the claim relies on–

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;  and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination.  If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official.  If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

(g) A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding.

(h) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority.  Appointment of counsel under this section shall be governed by section 3006A of title 18.

(i) The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains 13, 203  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Moreover, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point type.

/s/ Susanne G. Reardon_____
Susanne G. Reardon
Attorney for the Respondent

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Kathryn Hayne-Barnwell, counsel for the petitioner in this matter.  There are no non-registered participants involved in this case.

/s/ Susanne G. Reardon_
Susanne G. Reardon