UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

NO. 13-1310

AARON POWELL,
Petitioner/Appellant

v.

STEVEN TOMPKINS,
Sheriff, Suffolk County,
Respondent/Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

REPLY BRIEF OF PETITIONER/APPELLANT
_____

K. Hayne Barnwell (Bar No. 117279)
attorney.barnwell@gmail.com
Attorney at Law
401 Andover Street, Suite 201-B
North Andover, MA 01845
Tel. (978) 655-5011
Fax (978) 824-7553

Dated:  November 7, 2013

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................... ii

TABLE OF AUTHORITIES .......................................................iii

    CASES............................................................................iii

    STATUTORY AUTHORITY ........................................... vi

    CONSTITUTIONAL PROVISIONS.................................. vii

INTRODUCTION ................................................................... 1

ARGUMENT........................................................................... 2

    I.    The Respondent Has Failed To Show Any Rationale That Would Justify, In Keeping With Due Process, A Mandatory Presumption That Knowing Possessors Of Firearms Must Naturally Have No Licenses Or Registration Cards For Their Firearms ............................ 2

    II.   Relieving The Prosecution Of The Burden Of Proving That An Individual's Presumptive Exercise Of His Right To Keep And Bear Arms Is In Fact Unlawful Conduct Is Not A Regulation But A Direct Violation Of The Second Amendment................................. 8

    III.  Standing Is Not An Independent And Adequate State Law Ground But A Federal Constitutional Question And Thus, The Denial Of Standing Does Not Operate As A Procedural Default. The Respondent Has Also Not Contravened The Merits Of Powell's Second Amendment And Equal Protection Challenges To The Firearms Statutes' Age Restriction. ..................................................................... 10

CONCLUSION..................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Ake v. Oklahoma*,
    470 U.S. 68 (1985) ..........................................................................................11

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000) ...................................................................................2,3,5,6

*Barnes v. Thompson*,
    58 F.3d 971 (4th Cir. 1995) .........................................................................13

*Beard v. Kindler*,
    558 U.S. 53 (2009) ..........................................................................................12

*Brewer v. Marshall*,
    119 F.3d 993 (1st Cir. 1997) .......................................................................13

*Clemons v. Luebbers*,
    381 F.3d 744 (8th Cir. 2004) .......................................................................13

*Coleman v. Thompson*,
    501 U.S. 722 (1991) ........................................................................................12

*Commonwealth v. Farley*,
    64 Mass. App. Ct. 854 (2005) .........................................................................9

*Commonwealth v. Gordon*,
    354 Mass. 722 (1968) ...............................................................................11,13,14

*Commonwealth v. Humphries*,
    465 Mass. 762 (2013) .......................................................................................9

*Commonwealth v. Johnson*,
    461 Mass. 44 (2011) .........................................................................................9

*Commonwealth v. Jones*,
    372 Mass. 403 (1977) ............................................................................ *passim*

*Commonwealth v. Powell,*
    459 Mass. 572, 946 N.E.2d 114 (2011) .............................................. *passim*

*Commonwealth v. White,*
    452 Mass. 133 (2008) ...................................................................................4

*Commonwealth v. Young,*
    453 Mass. 707 (2009) ...................................................................................4

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ............................................................................ *passim*

*Glacken v. Dickhaut,*
    585 F.3d 547 (1st Cir. 2009) ......................................................................13

*Gunter v. Maloney,*
    291 F.3d 74 (1st Cir. 2002) ........................................................................10

*Harris v. Reed,*
    489 U.S. 255 (1989) .....................................................................................12

*Hathorn v. Lovorn,*
    457 U.S. 255 (1982) .....................................................................................12

*In Re Winship,*
    397 U.S. 358 (1970) ...............................................................................1,3,5,6

*Johnson v. Mississippi,*
    486 U.S. 578 (1988) .....................................................................................12

*Lambrix v. Singletary,*
    520 U.S. 518 (1997) .....................................................................................13

*Leary v. United States,*
    395 U.S. 6 (1969) ...........................................................................................8

*Lee v. Kemna,*
    534 U.S. 362 (2002) .....................................................................................13

*Lively v. State,*
    427 A.2d 882 (Del. 1981).............................................................................6

*Martin v. Ohio*,
    480 U.S. 228 (1987) ......................................................................5

*Massachusetts Commission Against Discrimination v. Colangelo*,
    344 Mass. 387 (1962)................................................................11,12

*McDonald v. City of Chicago*,
    130 S.Ct. 3020 (2010) ........................................................ *passim*

*Michigan v. Long*,
    463 U.S. 1032 (1983) ..................................................................15

*Morrison v. People of State of California*,
    291 U.S. 82 (1934) ........................................................................4

*National Rifle Ass'n of America v. Bureau of Alcohol*,
    700 F.3d 185 (5th Cir. 2012)........................................................16

*Obershaw v. Lanman*,
    453 F.3d 56 (1st Cir. 2006) ..........................................................13

*Ortiz v. DuBois*,
    19 F.3d 708 (1st Cir. 1994) ..........................................................15

*Planned Parenthood of Cent. Mo. v. Danforth*,
    428 U.S. 52 (1976) ......................................................................17

*Poland v. Stewart*,
    169 F.3d 573 (9th Cir. 1999) ......................................................13

*Prou v. United States*,
    199 F.3d 37 (1st Cir. 1999) ..........................................................10

*Sharpe v. Bell*,
    593 F.3d 372 (4th Cir. 2010) ......................................................13

*Smith v. Johnson*,
    216 F.3d 521 (5th Cir. 2000)........................................................13

*State v. Carter*,
    255 P.3d 721 (Wash. 2011) ..........................................................5

*Sweet v. Delo*,
    125 F.3d 1144 (8th Cir. 1997) ...................................................................13

*Taylor v. State*,
    578 N.E.2d 664 (Ind. 1991)...................................................................6

*United States v. Bartelho*,
    129 F.3d 663 (1st Cir. 1997) .........................................................16

*United States v. Raines*,
    326 U.S. 17 (1960) ...................................................................11

*Virginia v. Black*,
    538 U.S. 343 (2003) ...................................................................7

*Wainwright v. Sykes*,
    433 U.S. 72 (1977) ...................................................................12

*Walker v. Martin*,
    131 S. Ct. 1120 (2011) ...................................................................12

*Washington v. State*,
    517 N.E.2d 77 (Ind. 1987)...................................................................6

*Watt v. State*,
    31 So.3d 238 (Fla. Dist. Crt. App. 2010) ...................................................5,6

## STATUTORY AUTHORITY

18 U.S.C. § 922(b)...................................................................16

28 U.S.C. § 2254 ...................................................................8,16

M.G.L. c. 269 § 10...................................................................4,9,14

M.G.L. c. 278 § 7...................................................................*passim*

## <u>CONSTITUTIONAL PROVISIONS</u>

Amendment II, United States Constitution.................................................... *passim*

## INTRODUCTION

The Respondent maintains that the prosecution need only prove the elements of knowing possession of an operable firearm beyond a reasonable doubt to convict an individual of a crime. (Resp. Br. at pp. 20-22). He assures this Court that despite clear Supreme Court precedents stretching back to *In Re Winship*, 397 U.S. 358 (1970), such a result is consistent with due process. Yet he does not contend with the next question: Can those firearms convictions – without proof of unlawful or unlicensed possession – stand under the Second Amendment? As the District Court found, and the Respondent does not contest on appeal, (*see* Resp. Br. at p. 35), that question must be reviewed *de novo* because the Supreme Judicial Court (SJC) failed to answer it. The Respondent cannot have it both ways. Where the state need not prove, beyond a reasonable doubt, that the possessor of a firearm is unlicensed or unregistered, the statute criminalizes possession of a firearm, without more.

The SJC's erroneous finding that Powell (and all other similarly situated criminal defendants) lack standing does not prevent this Court's review on the merits, which raise Second Amendment and Equal Protection claims. The finding that criminal defendants lack standing because they "chose to violate the law" works a double mischief. *Commonwealth v. Powell*, 459 Mass. 572, 589-590 (2011). First, Massachusetts is relieved from the burden of proving at trial that a

1

defendant lacked a license or registration card for the firearm even though his or her failure to obtain a license or registration, never proven here, is apparently what the SJC means when it states that defendants like Powell "chose to violate the law." *Id*. Second, with the SJC's divestment of standing, Massachusetts has tried to relieve itself of the burden to prove that the firearms statutes meet the demands of the Second Amendment and the Equal Protection Clause. The Respondent demonstrates his inability to meet those demands in his response to the merits of Powell's claim that eighteen to twenty year old adults have equal and full rights to keep and bear arms.

## ARGUMENT

I.   **The Respondent Has Failed To Show Any Rationale That Would Justify, In Keeping With Due Process, A Mandatory Presumption That Knowing Possessors Of Firearms Must Naturally Have No Licenses Or Registration Cards For Their Firearms.**

As the Respondent re-states it, (Resp. Br. at p. 21), the SJC in *Jones* held that "[i]n the absence of evidence with respect to a license, no issue is presented with respect to licensing." *Commonwealth v. Jones*, 372 Mass. 403, 406 (1977). What the SJC failed to recognize in *Jones*, but what the Supreme Court later emphasized in *Apprendi*, is that an issue of fact is *always* presented once it is charged in the complaint or indictment. *Apprendi v. New Jersey*, 530 U.S. 466, 500 (2000). Those issues of fact - charged here as "firearm without FID card, possess" and "firearm,

2

carry without license" (R.A. 167) - are elements that the state must prove beyond a

reasonable doubt at trial.

> Courts have long had to consider which facts are elements in order to
> determine the sufficiency of an accusation (usually an indictment). The
> answer that courts have provided regarding the accusation tells us what an
> element is, and it is then a simple matter to apply that answer to whatever
> constitutional right may be at issue in a case-here, *Winship* and the right to
> trial by jury…This authority establishes that a "crime" includes every fact
> that is by law a basis for imposing or increasing punishment (in contrast with
> a fact that mitigates punishment).

*Apprendi*, 530 U.S. at 500-501. Despite the significance of this decision,

Respondent notably fails to discuss *Apprendi* in his brief. As the prosecution

provided no proof of the elements as charged in the complaint, Powell is entitled to

relief, and that should be the end of the matter. However, Powell will address

Respondent's other points in turn.

When discussing the corollary, comparative convenience test, the Respondent

recognizes that Massachusetts has the Firearms Records Bureau (FRB), which

receives mandated information on licenses issued by local licensing authorities.

(Resp. Br. at p. 23). As a result, whether a particular firearm is licensed is not

peculiarly within the knowledge of Powell and like defendants. Assuming

Respondent's speculation is correct that "diverse and autonomous local agencies"

may not promptly report licenses to the FRB, that does not change the fact that

Massachusetts has both local and state-wide sources from which to obtain this

knowledge. To re-cast an issue of fact as an affirmative defense, it is not enough to

3

say that the state must do some work to acquire the knowledge. A prosecutor could call a witness from the local licensing authority and/or a witness from the FRB to testify that there is no record of a particular defendant having a firearms license or card. Perhaps defense counsel could score one or two cross-examination points by inquiring as to the currentness or general completeness of the agency's records, but the Respondent does not and cannot contend that such testimony would be insufficient proof that a defendant lacked a firearms license or FID card. This of course does not preclude the prosecution from alternative modes of proof. There is thus no "manifest disparity in convenience of proof and opportunity for knowledge[.]" (Resp. Br. at p. 25); *see Morrison v. People of State of California*, 291 U.S. 82, 91 (1934).

As the District Court correctly found, a license is not merely an exception in M.G.L. c. 269, § 10. Instead, the lack of a license is the essential key by which non-criminal conduct becomes criminal conduct. *See Commonwealth v. Young*, 453 Mass. 707, 714 (2009) (reasoning that "unlicensed possession of a firearm" is a "regulatory crime.") and *Commonwealth v. White*, 452 Mass. 133, 136 (2008). Lest there be any doubt as to its significance in the statute, the complaint resolves it. (R.A. 167). The cases upon which the Respondent relies to cast licensing as an affirmative defense are inapposite. They involve murder cases where affirmative defenses, such as self-defense or extreme emotional distress, would excuse a

killing that would otherwise meet the elements of murder. *See Martin v. Ohio*, 480 U.S. 228, 233 (1987). "The State did not exceed its authority in defining the crime of murder as purposely causing the death of another with prior calculation or design." *Id*. Nor does Massachusetts exceed its authority in defining and charging the crimes as possession of a firearm without an FID card and carrying a firearm without a license. However, contrary to the SJC's decisions in *Jones* and *Powell*, it must prove each and every one of those elements including lack of license and FID card. If Massachusetts has not defined the elements to include lack of license and/or FID card, then the statute runs directly afoul of the Second Amendment, as mere possession of a firearm cannot be criminalized.

Nor does the Respondent's reliance upon foreign state opinions improve his position. (*See* Resp. Br. at p. 28). With the exception of two cases, they all pre-date *Apprendi* and *Heller*. In *State v. Carter*, 255 P.3d 721 (Wash. 2011), the Court of Appeals of Washington, Division Two, held that its statute did not include an element that one lack a firearms license, but analyzed the issue solely as a matter of statutory construction. *Id*. at 726-727. The *Carter* court did not consider due process and thus, *In Re Winship*, *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) and *District of Columbia v. Heller*, 554 U.S. 570 (2008) are not mentioned. In *Watt v. State*, 31 So.3d 238 (Fla. Dist. Crt. App. 2010), the Court of Appeal of Florida likewise ruled upon the issue strictly as a matter of statutory construction.

5

*Id.* at 241-242. Two of the cases pre-dating *Apprendi* and *Heller* either briefly dispose of the issue without reference to any due process claim, *see Taylor v. State*, 578 N.E.2d 664, 666 (Ind. 1991), or consider it strictly as a matter of statutory construction, *see Washington v. State*, 517 N.E.2d 77, 79 (Ind. 1987). The sole opinion that mentions *In Re Winship* and thereby the due process issue is *Lively v. State*, 427 A.2d 882 (Del. 1981). Not only does *Lively* pre-date significant decisions such as *Apprendi* and *Heller*, but, like the SJC's decision here, it takes refuge not in reasoning but in "the law of Delaware [which] has long been settled on this issue[]" and in the "rationale and conclusion" of the SJC's decision in *Jones. Id.* at 884. Thus, these opinions provide no persuasive or relevant authority to support the Respondent's argument that the SJC's decision is reasonable.

The Respondent concedes that M.G.L. c. 278, § 7 "appears to create a mandatory presumption." (Resp. Br. at p. 30). Its mandatory presumption is also unconstitutional. The Supreme Court holds a "fair degree of hostility" toward such presumptions. (Pet. Add. 88-89). A mandatory presumption remains disfavored whether the burden shifted to the defendant is one of production or one of persuasion. For example, in *Virginia v. Black*, the Supreme Court reasoned, in a plurality opinion, that Virginia's jury instruction that cross-burning was prima facie evidence of an intent to intimidate a person or group of persons is unconstitutional because "even

where a defendant like Black presents a defense, the prima facie evidence

provision makes it more likely that the jury will find an intent to intimidate

regardless of the particular facts of the case." *Virginia v. Black*, 538 U.S.

343, 365 (2003). Just as Section 7 permits prosecutions solely based on

firearms possession, in *Black*, "[t]he provision permits the Commonwealth

to arrest, prosecute, and convict a person based solely on the fact of cross

burning itself." *Id*.

Even if Section 7 can be considered akin to a permissive presumption,

the Respondent does not adequately explain any rational connection between

knowing possession of a firearm and the lack of a firearms license. Instead of

connecting those disparate facts, the Respondent apparently asserts that the

rational connection is obvious because "it is entirely rational to presume that a

defendant charged with illegal possession of a firearm would come forward

with a valid license and the failure to do so entitles the trier of fact to presume

that he does not have a valid license." (Resp. Br. at p. 31). Is it then obvious

that all Massachusetts citizens, who knowingly possess firearms,

presumptively have no licenses for them and are thereby subject to criminal

charge? Surely not. A criminal charge, in and of itself, proves no rational

connection between the two facts because a defendant is presumed innocent at

trial. Without "substantial assurance that the presumed fact is more likely

that not to flow from the proved fact on which it is made to depend[,]" *Leary v. United States*, 395 U.S. 6, 32-33 (1969), Section 7's mandatory presumption and thereby any required affirmative defense regarding licensing must fail under the due process clause.

## II.     Relieving The Prosecution Of The Burden Of Proving That An Individual's Presumptive Exercise Of His Right To Keep And Bear Arms Is In Fact Unlawful Conduct Is Not A Regulation But A Direct Violation Of The Second Amendment.

As an initial matter, the Respondent does not contest that this Second Amendment claim should be subject to *de novo* review. Rather, he states: "Petitioner's claim fails on the merits regardless of whether the SJC's decision is reviewed under the standards of 28 U.S.C. § 2254(d) or *de novo*." (Resp. Br. at p. 35). Also, for all the reasons stated in Powell's principal brief, *Heller* and *McDonald* held that the Second Amendment protects the right to keep and bear arms, which arises both in and out of the home. (*Compare* Pet. Br. at pp. 30-31 to Resp. Br. at pp. 32-34, 37-38). In any event, this Court need not resolve the Second Amendment's reach on this issue because M.G.L. c. 278, § 7 applies no matter a defendant's location. Section 7 states: "A defendant in a criminal prosecution, relying for his justification upon a license…or authority, shall prove the same; and, until so proved, the presumption shall be that he is not so authorized." The trigger

for Section 7's presumption is knowing possession of a firearm, without more. Section 7 applies no matter where such possession occurs. *See Commonwealth v. Johnson*, 461 Mass. 44, 55 n.14 (2011); *Commonwealth v. Farley*, 64 Mass. App. Ct. 854, 861-862 (2005); and *Commonwealth v. Humphries*, 465 Mass. 762, 768-769 (2013).

As for the merits of this claim, the Respondent has incorrectly framed Powell's argument: "Petitioner is wrong to contend that *Heller*/*McDonald* do not permit Massachusetts to license the carrying of handguns in public." (Resp. Br. at p. 37). Powell does not challenge a legislature's general prerogative in regulating firearms and in requiring that they be licensed. The Respondent nonetheless asserts: "The statutes at issue in *Heller* and *McDonald* precluded any opportunity the public had for such legal possession; the Massachusetts firearms licensing statutes afford this opportunity." (Resp. Br. at p. 37). As a practical matter, a typical individual may obtain a license and FID card for his firearm. However, pursuant to the *Jones* and *Powell* decisions, the respective crimes under M.G.L. c. 269, § 10 have only the following elements: (1) knowing; (2) possession or carrying; (3) of an operable; (4) firearm. Section 10 thus erects an absolute ban of knowing firearms possession as a legal matter. Prosecutors have been relieved of any burden to prove at trial that defendants lack licenses or FID cards for their firearms. Unless a defendant first produces some evidence regarding a license,

which may then be used against him or used for some other unfavorable purpose, the ban stands firm. Defendants should have *no* burden to show that their presumptive exercise of a constitutional right is valid and lawful. This is not the kind of "regulation" the Second Amendment permits because "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.

> **III.   Standing Is Not An Independent And Adequate State Law Ground But A Federal Constitutional Question And Thus, The Denial Of Standing Does Not Operate As A Procedural Default. The Respondent Has Also Not Contravened The Merits Of Powell's Second Amendment And Equal Protection Challenges To The Firearms Statutes' Age Restriction.**

The federal constitutional question of standing cannot be considered an independent and adequate state law ground to prevent this Court's review of Powell's Second Amendment and Equal Protection claims. The Respondent cites to no case, and undersigned counsel could also find none, where on habeas review, a federal court has held that a state court's conclusion that a petitioner lacked standing constituted either an independent and adequate state law ground or some other means of a procedural default. "…[A] procedural default [is one] in which a failure seasonably to raise a claim bars subsequent attempts to do so. Waiver, in contrast, represents an express decision by a party not to pursue a claim." *Prou v. United States,* 199 F.3d 37, 42 n.2 (1st Cir. 1999). A claim or objection must be "fairly presented to the state court." *Gunter v. Maloney*, 291 F.3d 74, 81 (1st Cir.

2002). Here, the SJC did not hold or reason that Powell waived these claims or did not seasonably raise his Second Amendment and Equal Protection claims. Indeed, it held to the contrary that trial counsel's failure to raise these claims prior to the *McDonald* decision was excused by the clairvoyance doctrine. *Powell*, 459 Mass. at 586-587. The SJC did not find procedural default, but instead that Powell could not even bring his claims to the court in the first instance.

"[W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The Respondent relies upon *Commonwealth v. Gordon*, 354 Mass. 722 (1968) in an attempt to transform the doctrine of standing into a state procedural question. Like many other cases, *Gordon* cites to the oft-stated principle of law that in order to mount a claim and obtain standing in court, the claimant must show that he or she has suffered some injury. *Gordon*, 354 Mass. at 725. In doing so, it relies upon *United States v. Raines*, 326 U.S. 17, 20 (1960), which discusses standing not as a procedural rule but as a fundamental, preliminary question of a court's Article III power. "The very foundation of the power of the federal courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them." *Id*. *See also Massachusetts Commission Against Discrimination v. Colangelo*, 344

11

Mass. 387, 390 (1962) ("Before trying to analyze those objections certain general principles [like standing] should be clearly noted."). Thus, standing is not independent of a federal question.

The host of cases upon which the Respondent relies are inapposite because they do not address whether the denial of standing can be considered a procedural default. (*See* Resp. Br. at pp. 43-44, 47-49). Instead, the cases relate to the commonly-known triggers for state procedural default - the failure to bring a claim at trial or on direct appeal, the failure to bring a claim in a timely manner and the failure to comply with other specific, state procedural laws or rules. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) (petitioner filed notice of appeal late in violation of Virginia's procedural rule); *Beard v. Kindler*, 558 U.S. 53, 58-59 (2009) (due to petitioner's escapes and fugitive status, Pennsylvania's fugitive forfeiture law operated to dismiss any of his post-verdict motions); *Walker v. Martin*, 131 S. Ct. 1120, 1124 (2011) (petitioner missed deadline to file habeas petition); *Wainwright v. Sykes*, 433 U.S. 72, 75-77 (1977) (petitioner did not contemporaneously object to admission of inculpatory statements in violation of *Miranda*); *Johnson v. Mississippi*, 486 U.S. 578, 583 (1988) (petitioner failed to raise aspect of conviction on direct appeal and thus waived the issue); *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982) (first raised issue in petition for rehearing); *Harris v. Reed*, 489 U.S. 255, 257-258 (1989) (petitioner did not raise ineffective

12

assistance claim on direct appeal); *Brewer v. Marshall*, 119 F.3d 993, 1001-1002 (1st Cir. 1997) (petitioner untimely objected to the trial court's striking of black jurors); *Lambrix v. Singletary*, 520 U.S. 518, 521-523 (1997) (petitioner did not raise jury instruction issue on direct appeal); *Glacken v. Dickhaut*, 585 F.3d 547, 550 (1st Cir. 2009) (no objection to jury instruction); *Obershaw v. Lanman*, 453 F.3d 56, 67-68 (1st Cir. 2006) (no objection to closing argument); *Sharpe v. Bell*, 593 F.3d 372, 377-378 (4th Cir. 2010) (procedurally defaulted ineffective assistance claim); *Barnes v. Thompson*, 58 F.3d 971, 972 (4th Cir. 1995) (untimely exculpatory-evidence claim); *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (failure to raise claim in first habeas petition); *Clemons v. Luebbers*, 381 F.3d 744, 752 (8th Cir. 2004) (failure to present ineffective assistance claim in state courts); *Sweet v. Delo*, 125 F.3d 1144, 1149-1150 (8th Cir. 1997) (failure to raise claims in direct appeal); *Lee v. Kemna*, 534 U.S. 362, 386-388 (2002) (state court's denial of motion to continue trial did *not* procedurally bar due process claim on habeas review); and *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999) (ineffective assistance claim barred under state procedural rule).

The Respondent does not provide any Massachusetts case or procedural rule that prevents defendants from bringing facial challenges to such statutes. (*See* Resp. Br. at p. 45). It may be that the court will dispatch these challenges due to the difficulty of proof, but the court must still consider them. *Gordon* itself

expressly allows standing for such facial attacks even if a defendant did not apply

for a license. *Gordon*, 354 Mass. at 725. Here, the firearms statutes – insofar as

they restrict eighteen-to-twenty-year old adults from exercising their Second

Amendment rights – are void because they apply to all such adults regardless of

their relative maturity or risk to the public. Because Powell falls within this class

which is automatically disqualified from obtaining firearms licenses, the statutes

are clearly unconstitutional as applied to him.

As a result, the District Court correctly concluded that no procedural default[1]

operated to preclude Powell from bringing his constitutional challenges to his

convictions. Alternatively, the SJC's reliance only upon a Maryland case, but not

upon any Massachusetts rule or law, to justify its denial of standing here should not

trigger procedural default. *See Powell*, 459 Mass. at 589-590. The SJC's decision

also strains logic, where, on the one hand, the SJC holds that the absence of license

and FID card are not elements of the firearms statutes, yet on the other hand, it

holds that an individual must apply for a license and FID card in order to bring any

sort of constitutional challenge to these statutes. "[I]t is equally important that

ambiguous or obscure adjudications by state courts do not stand as barriers to a

determination by this court of the validity under the federal constitution of state

---

[1] The District Court did conclude that Powell lacked standing to bring a constitutional challenge to the portion of M.G.L. c. 269, § 10 and other firearms statutes related to FID cards. However, it did not base its conclusion on procedural default. (Pet. Add. 106-108).

14

action." *Michigan v. Long*, 463 U.S. 1032, 1041 (1983) (citation omitted). The

Respondent incorrectly claims that "Petitioner did not address the issue of

procedural default in his brief and thus, does not claim that there was cause and

prejudice to excuse the defaults[.]" (Resp. Br. at p. 48). Powell discusses in his

brief the futility doctrine which operates to excuse any purported default or lack of

standing. (Pet. Br. at pp. 36-40). Powell also expressly linked futility to the cause

and prejudice prongs as an alternative finding in his habeas reply memorandum,

which was filed in the District Court. (R.A. 372-374). The District Court's

favorable ruling on futility should stand. This ruling (along with general standing

principles) should also apply to his FID conviction. (*See* Pet. Br. at pp. 37-39).

Ultimately, whether the futility doctrine is interpreted as an exception to general

standing rules or as "cause" to excuse a procedural default, it applies here to merit

full review of Powell's constitutional claims. The "prejudice" prong is inherently

met if this Court agrees with Powell that he was charged, tried and convicted under

unconstitutional statutes. Undoubtedly then, the statutes as applied to his case

"worked to his actual and substantial disadvantage[.]" *Ortiz v. DuBois*, 19 F.3d

708, 714 (1st Cir. 1994).

　　　As for the merits of these claims, the Respondent does not contest that

review should be *de novo*. Instead, he states again that "the petitioner's claim fails

on the merits regardless of whether the SJC's decision is reviewed under the

standards of 28 U.S.C. § 2254(d) or *de novo*." (Resp. Br. at pp. 49-50). The

Respondent also does not address in his brief the standard of review to be applied

to his Second Amendment claim. Instead, the Respondent claims that there is no

constitutional right at all to possess a firearm outside the home and/or that a ban

against eighteen-to-twenty-year old adults from carrying handguns outside the

home is a presumptively lawful regulation. (*See* Resp. Br. at pp. 51-52). Thus, to

the extent that the Respondent disagrees with the standard of review being

intermediate scrutiny, as the District Court found, or strict scrutiny, as Powell

claims, the Respondent has waived any such argument. *See United States v.*

*Bartelho*, 129 F.3d 663, 674 n.11 (1st Cir. 1997).

     Powell's claims must prevail under any level of scrutiny. The Respondent

minimizes the harm of the firearms statute by construing it as one that simply sets a

"minimum age to obtain a license to carry a firearm outside the home."[2] (Resp. Br.

at p. 51). But there are real, eighteen-to-twenty-year old adults who are being

harmed by being completely denied the right to defend themselves outside the

home. The heavily restricted and supervised "right" they have to possess an

ordinary handgun in the home is obliterated once they step outside the home. Their

---

[2] A specific challenge has been brought against 18 U.S.C. § 922(b)(1), which makes it unlawful to sell or deliver any firearm to an individual less than twenty-one years of age. The NRA's petition for certiorari is currently pending and the Supreme Court has called upon the Solicitor General for a response. *See National Rifle Ass'n of America v. Bureau of Alcohol*, 700 F.3d 185 (5th Cir. 2012), *petition for certiorari pending*, USCOT Docket No. 13-137.

"quintessential self-defense weapon", *Heller*, 554 U.S. at 629, must be left behind whether or not they will be walking on dangerous streets and whether or not they have a valid fear of someone trying to harm them. This ban is not and cannot be one of the presumptively lawful regulations to which the Supreme Court refers. *Heller*, 554 U.S. at 626-627 and *McDonald*, 130 S. Ct. at 3047.

In *Heller* and *McDonald*, the Supreme Court not only held that possession of an ordinary handgun in the home is lawful conduct, but also that "the people" enjoy the *fundamental* right to keep and bear arms under the Second Amendment. *Heller*, 554 U.S. at 593-594; *McDonald*, 130 S. Ct. at 3042. Like the District Court, the Respondent fails to point to any historical evidence or satisfying rationale whereby eighteen-to-twenty-year old adults would be included as "the people" for the purposes of defending our nation militarily, but would be excluded as "the people" for the purpose of defending themselves. "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976). Thus, the firearms statutes' denial of the ability of young adults to exercise their Second Amendment rights, without any tailoring or justification, cannot stand.

17

Case: 13-1310    Document: 41-2    Page: 25    Date Filed: 11/07/2013    Entry ID: 5778565

## **CONCLUSION**

For all the foregoing reasons and those raised in his principal brief, Aaron

Powell respectfully requests that this Court REVERSE the District Court's denial

of his habeas petition and GRANT him habeas relief.


Petitioner/Appellant
Aaron Powell
By His Attorney,


*/s/ K. Hayne Barnwell*
K. Hayne Barnwell (Bar No. 117279)
attorney.barnwell@gmail.com
Attorney at Law
401 Andover Street, Suite 201-N
North Andover, MA  01845
Tel. (978) 655-5011
Fax (978) 824-7553

Dated:  November 7, 2013

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the type-volume limitation, typeface requirements, and type style requirements, in that (1) this brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 4,287 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii), and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2008 for Mac, version 12.3.6, in Times New Roman 14 point font.

*/s/ K. Hayne Barnwell*
K. Hayne Barnwell


## CERTIFICATE OF SERVICE

I hereby certify that I electronically served a copy of this document via the Court's CMECF system upon the following registered participant of the system: AAG Susanne Reardon, Attorney General's Office, One Ashburton Place, Boston, MA 02108, via her email address: susanne.reardon@state.ma.us, on November 7, 2013.

*/s/ K. Hayne Barnwell*
K. Hayne Barnwell